**UNITED STATES OF AMERICA,**
Plaintiff–Appellee,

v.

**Desmond OLLIVIERRE, a/k/a James Franklin Bridges, Defendant–Appellant.**

No. 03–4802.

United States Court of Appeals,
Fourth Circuit.

Argued: June 4, 2004.

Decided: Aug. 13, 2004.

**ARGUED:** John Herman Hare, Assistant Federal Public Defender, Office of the Federal Public Defender, Columbia, South Carolina, for Appellant. Marshall Prince, Assistant United States Attorney, Office of the United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United States Attorney, Jimmie C. Ewing, Office of the United States Attorney, Columbia, South Carolina, for Appellee.

Before WILLIAMS and KING, Circuit Judges, and LOUISE W. FLANAGAN, United States District Judge for the Eastern District of North Carolina, sitting by designation.

Judge KING wrote the opinion, in which Judge WILLIAMS and Judge FLANAGAN joined.

## OPINION

KING, Circuit Judge:

Desmond Ollivierre appeals his conviction and sentence in the District of South Carolina for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). *United States v. Ollivierre*, No. 0:97–0726(CMC) (D.S.C. Sept. 29, 2003). Ollivierre maintains on appeal that the prosecutor made an improper and prejudicial closing argument that denied him a fair trial. As explained below, we affirm.

## I.

On September 23, 1997, Bridgette Caldwell provided information to the Lancaster County, South Carolina, Sheriff's Office concerning a drug dealer known as "Snoop." In response, the Sheriff, with Caldwell's cooperation, arranged for undercover agent Donnie Washington to purchase nine ounces of cocaine base from Snoop for $6,500. That evening, Caldwell and Washington proceeded to an agreed-upon transaction site—the Panhandle Exxon in Lancaster. Snoop and defendant Ollivierre arrived at the Exxon soon thereafter in a GMC Yukon. They exited the Yukon and, along with Caldwell and Washington, entered the Exxon station. Ollivierre soon left the Exxon and returned to the vehicle. Snoop thereafter also left the station, walked to the Yukon, leaned in toward Ollivierre, and appeared to converse. After retrieving something from the Yukon, Snoop entered Washington and Caldwell's vehicle. When Snoop was in the passenger's seat of Washington's car, Washington advised that they would go to a nearby dirt road to complete the drug deal. Snoop then told Ollivierre to follow them in the Yukon, and Ollivierre complied.

As Snoop, Washington, and Caldwell drove to the dirt road, Snoop showed Washington the drugs. After advising Snoop that he needed to get money from the trunk of his car, Washington exited the vehicle and signaled for other law officers to arrest Snoop and Ollivierre. Ollivierre promptly fled the scene in the Yukon, and a dangerous high-speed chase ensued. The chase, lasting approximately thirty minutes and covering about twenty-five miles, ended on a dead-end road. Ollivierre then jumped out of the Yukon and continued to flee on foot. He was finally tracked down by a police bloodhound unit and located hiding in a tree. When apprehended, Ollivierre was carrying over $1,700 in cash.

On October 15, 1997, after being charged in a federal complaint, Ollivierre was released by a magistrate judge on a $50,000 secured bond. On October 22, 1997, Ollivierre and Snoop were indicted for a single count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Ollivierre thereafter absconded, and an arrest warrant was issued on December 24, 1997, charging him with bond jumping. On January 7, 2003, more than five years after jumping bond, Ollivierre was arrested in the Northern District of Georgia. His trial began on May 15, 2003, and it concluded the following day. Ollivierre did not testify in his own defense, and the jury returned a guilty verdict.

The dispute underlying this appeal stems from the prosecutor's closing argument and the manner in which it was addressed by defense counsel and the trial court. In seeking a new trial in the district court, and again on appeal, Ollivierre complains of fourteen aspects of the argument. At trial, however, he objected to only three of them. The comments and

remarks that were subject to objection are the following:

- "I would submit to you, ladies and gentlemen, [Ollivierre] is trying to run today. With the help of his lawyer, he is still trying to hide from you." (the "Running Remark").

- "I think sometimes when I am listening to the defense in their case, I am sure this is not their intent but it comes across sometimes as maybe to get you off track, to confuse you." (the "Off Track Comment").

- "One of the things [Mr. Ollivierre's counsel] made mention of was that there was no testimony about the distance between Ms. Caldwell and actually being able to see this leaning. Again, I remember her saying 12 feet, approximately 12 feet but again you recall. I remember her also saying there was nothing obstructing her view. Nothing. He doesn't remember that. Of course, he has selective amnesia because he is representing his client." (the "Amnesia Comment").

Ollivierre objected to these comments and remarks in a timely manner and, except for the Amnesia Comment, his objections were sustained. In response to Ollivierre's objection to the Running Remark, a curative instruction was given to the jury. When the court sustained his objection to the Off Track Comment, that line of argument ceased and was not resurrected. Ollivierre's objection to the Amnesia Comment was overruled.

Ollivierre also complains of a series of eleven other comments made in the prosecutor's closing argument, as to which no timely objections were made. Indeed, Ollivierre first raised an issue of impropriety with respect to these comments when he filed his motion for a new trial, seven days after the verdict was returned. These in-clude the following seven comments, which allegedly impugned defense counsel:

- "Mr. Ollivierre wants to now through his lawyer distance himself from the bag [of drugs] as he tried to distance himself from the scene." (the "Distance Comment").

- "Again, the defendant is working with his lawyer in the trial of this cases [sic] and he certainly is innocent until proven guilty."

- "There is an old saying that goes if the law is on your side, argue the law. If the facts are on your side, argue the facts. If neither is on your side, just argue." (the "Argue Comment").

- "He quotes so many times in his argument. He quotes the law repeatedly but then he tries to weave in distorted facts to try to make his argument." (the "Distorted Facts Comment").

- "You may hear that the government met with the witnesses and got them to say what they wanted them to say. We planned and orchestrated their testimony and that kind of thing. You may not hear that argument but you may. We submit to you, ladies and gentlemen, if we wanted to do that, we could have done a better job. We could have simply asked Ms. Caldwell to say 'absolutely no question, I saw Mr. Ollivierre with the package in his hands and gave it to [Snoop] and [Snoop] came and got in my car'; and for good measure, we could have said Detective Washington I want you to say the very same thing; that you saw Mr. Ollivierre give the package to [Snoop] and [Snoop] came and got in the car." (the "Suborn Perjury Comment").

- "One of the things that I have come to, really had to get used to is sitting and listening to defense attorneys

make arguments that are what I consider to be so incredible in light of the facts or the evidence presented in the case. This case is no exception. Another thing that I had to get used to is looking at defense attorneys and seeing how they can make arguments with a straight face in spite of the tremendous amount of evidence and to make statements like they do, like the government didn't come close to proving their case."

● "I don't want to insult your intelligence by again recapping absolutely everything, but he says that the government has no proof other than the flight information. Once again, that is just incredible that he can say that with a straight face, incredible." (along with the preceding comment, the "Straight Face Comments").

The eleven comments, raised for the first time in post-trial proceedings, include four instances where the prosecutor allegedly vouched for his witnesses (the "Vouching Comments").

● "Ms. Caldwell, she has a checkered past, no question about that. But we found this. She came to us. She had information. We acted on the information. That brought the case before you. The defense would probably want you to believe that you take this quantum leap of her having a reason to lie and, therefore, necessarily lying. We would submit to you that this is not the case, not necessarily the case and not the case."

● "I submit to you, ladies and gentlemen, we asked the witnesses to testify to what happened and that is what they did and it is more than enough."

● "Again, we are not bragging, we are not boasting but there is absolutely no way we believe you can come away with any other verdict than one of

guilty because the evidence in this case is beyond a reasonable doubt."

● "Ms. Caldwell really sank this case and he knows that. He tried to shake her and he couldn't because she told the truth. He knows that."

On May 23, 2003, Ollivierre filed his new trial motion, asserting that these fourteen comments and remarks of the prosecutor were improper and prejudicial, and that he was thus denied a fair trial. According to his motion, the Assistant United States Attorney's argument was improper and prejudicial in three separate respects: (1) it infringed on Ollivierre's Fifth Amendment right to remain silent; (2) it denigrated the integrity of defense counsel; and (3) it vouched for certain government witnesses.

On September 25, 2003, the district court denied the new trial motion and sentenced Ollivierre to 225 months in prison, to be followed by three years of supervised release. Ollivierre has appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

▇▇▇ A trial court possesses broad discretion to control closing argument, and its discretion is not to be overturned absent a showing of clear abuse. *United States v. Grabiec*, 563 F.2d 313, 319 (7th Cir.1977); *United States v. Davis*, 557 F.2d 1239, 1244–45 (8th Cir.1977). If a trial court abuses its discretion in addressing an objection to closing argument, such an abuse will justify reversal of a conviction only if it constitutes prejudicial error. *See United States v. Young*, 470 U.S. 1, 13 n. 10, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (explaining that reviewing court may reverse otherwise proper conviction only after concluding that error was not harmless). On the other hand, we review for plain error

an issue concerning closing argument to which no timely objection was made. *See United States v. Adam,* 70 F.3d 776, 780 (4th Cir.1995) (observing that contentions concerning argument are reviewed for plain error when defense did not timely object). And we may only grant relief to a defendant on the basis of plain error when the mandate of *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), has been satisfied.[1] Finally, we review for abuse of discretion a trial court's denial of a motion for a new trial. *United States v. Arrington,* 757 F.2d 1484, 1486 (4th Cir.1985).

### III.

On appeal, Ollivierre continues to maintain that the prosecutor's closing argument was improper, and that he was thus denied a fair trial. As set forth above, the comments of which he complains fall into three categories: (1) comments that infringed Ollivierre's Fifth Amendment right to remain silent; (2) comments that denigrated the integrity of defense counsel; and (3) comments by which the prosecutor vouched for the credibility of his witnesses. After reviewing some pertinent legal principles governing the conduct of closing argument in a criminal trial, we assess these three categories in turn.

1. The plain error mandate of *Olano* is satisfied if: (1) there was error; (2) it was plain; and (3) it affected the defendant's substantial rights. *Olano,* 507 U.S. at 732, 113 S.Ct. 1770. If these conditions are met, we may then exercise our discretion to notice the error, but only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.*

2. We apply exacting professional standards to lawyers who represent the sovereign. As Justice Sutherland appropriately observed many years ago:

### A.

First of all, we recognize that great latitude is accorded counsel in presenting closing argument to a jury. *See Oken v. Corcoran,* 220 F.3d 259, 269–70 (4th Cir.2000). Despite such latitude, however, the guiding principle is that a prosecutor should not strike "foul blows," and that guiding principle leads to certain simple rules governing a prosecutor's conduct during closing argument.[2] For example, it is improper for a prosecutor to comment on a defendant's failure to testify. *See United States v. Anderson,* 481 F.2d 685, 701 (4th Cir.1973). A prosecutor should not portray as fact matters that are not in evidence, *see United States v. Gonzalez,* 488 F.2d 833, 836 (2d Cir.1973), he should not misstate the facts or the law, *see Berger v. United States,* 295 U.S. 78, 84, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), *United States v. Phillips,* 527 F.2d 1021, 1023 (7th Cir.1975), and he is not to express his personal belief that the defendant is guilty, *see United States v. Garza,* 608 F.2d 659, 664 (5th Cir.1979). Importantly here, it is improper for a prosecutor to launch a personal attack upon the defense attorney or upon defense lawyers generally. *See United States v. Bennett,* 75 F.3d 40, 46 (1st Cir.1996); *United States v. Boldt,* 929 F.2d 35, 40 (1st Cir.1991). And a prosecutor is not entitled to express his personal belief in the credibility of his witnesses.

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.... He may prosecute with earnestness and vigor—indeed, he should do so. But, *while he may strike hard blows, he is not at liberty to strike foul ones.* *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (emphasis added).

*See United States v. Sanchez,* 118 F.3d 192, 198 (4th Cir.1997).[3]

## B.

We turn first to our assessment of Ollivierre's Fifth Amendment claim. This contention rests on the prosecutor's Running Remark, that "I will submit to you, ladies and gentlemen, [Ollivierre] is trying to run today. With the help of his lawyer, he is still trying to hide from you." Ollivierre's lawyer promptly objected to the Running Remark, and the court responded with a curative instruction that "the defendant has no burden of proving anything. The government has the burden of proving guilt beyond a reasonable doubt."[4] Ollivierre contends that, in making the Running Remark, the Assistant United States Attorney infringed on his Fifth Amendment right to remain silent, and that he was thus denied a fair trial.

The Fifth Amendment precludes a prosecutor from commenting to a jury on the failure of an accused to testify in his own defense. *See* U.S. Const. amend. V ("No person shall be . . . compelled in any criminal case to be a witness against himself. . . ."); *Anderson,* 481 F.2d at 701 (prohibiting argument that would "naturally and necessarily" be taken as comment on failure of accused to testi-

fy). Examined in context, however, *see United States v. Knowles,* 66 F.3d 1146, 1163 (11th Cir.1995), the Running Remark plainly was not intended as, and a reasonable jury would not necessarily have taken it as, a commentary on Ollivierre's failure to testify. On the heels of the prosecutor's review of the evidence of flight, the natural implication of the Running Remark is that Ollivierre's repeated attempts to evade custody indicated consciousness of guilt.[5] And it is elementary that evidence of flight is properly admissible as evidence of guilt. *See United States v. Obi,* 239 F.3d 662, 665 (4th Cir.2001) (observing that consciousness of guilt may be deduced from evidence of flight).[6]

Even if other implications could have been drawn from the Running Remark, a finding that Ollivierre's efforts to flee exhibited a consciousness of guilt was entirely permissible. And we must, of course, view the evidence supporting the verdict in the light most favorable to the prosecution. *See United States v. Bolden,* 325 F.3d 471, 479–80 n. 5 (4th Cir.2003) (observing that we view evidence supporting guilty verdict in light most favorable to prosecution). In this context, we are unable to conclude that the Running Remark was understood to mean that Ollivierre was trying to hide from the jury by not testifying.[7] The trial

---

3. With the exception of the rule prohibiting a prosecutor from commenting on a defendant's failure to testify, these principles are equally applicable to defense attorneys.

4. In addition to this curative instruction, the court instructed the jury, in its preliminary instructions and following closing argument, that it was not to attach any significance to Ollivierre's failure to testify, and that no adverse inference could be drawn from his failure to take the witness stand. We generally presume that a jury obeys the instructions. *See United States v. Francisco,* 35 F.3d 116, 120 (4th Cir.1994).

5. Immediately prior to making the Running Remark, the prosecutor argued, "He got out on bond and what does he do? He runs again. . . . Fugitive for five plus years. . . . He is arrested, brought back here to answer these charges."

6. Following closing argument, the trial court instructed the jury regarding evidence of flight as proof of consciousness or awareness of guilt.

7. In further support of his first contention, Ollivierre maintains that the prosecutor infringed on his right not to testify when he argued that "Mr. Ollivierre wants to now

court therefore did not err in its handling of this aspect of the prosecutor's argument.

## C.

■ Ollivierre's second contention is that the prosecutor's closing argument resulted in the denial of a fair trial because ten of the prosecutor's comments denigrated the integrity of defense counsel, both personally and in the abstract. In assessing whether a prosecutor's argument warrants reversal, we apply a two-part test, i.e., (1) whether the argument was improper, and if so, (2) whether it so prejudicially impacted the defendant's substantial rights as to deprive him of a fair trial. *See United States v. Chorman,* 910 F.2d 102, 113 (4th Cir.1990). As explained below, although certain of this prosecutor's comments about Ollivierre's lawyer and concerning defense attorneys should not have been made, Ollivierre was not thereby deprived of a fair trial.

### 1.

■ Before turning to our analysis, we pause to emphasize the importance of ensuring that prosecutors refrain from impugning, directly or through implication, the integrity or institutional role of their brothers and sisters at the bar who serve as defense lawyers. *See United States v. Vaccaro,* 115 F.3d 1211, 1218 (5th Cir.1997) (finding prosecutor's statement that defense lawyers "muddle the issues" to be "clearly improper"); *Bruno v. Rushen,* 721 F.2d 1193, 1194 (9th Cir.1983) (per curiam) (finding improper prosecutor's hints to jury that hiring counsel was probative of guilt). As has been aptly observed, a prosecutor's resort to such backhanded tactics may well indicate a lack of sufficient evidence or a failed attempt to unearth ad-

missible evidence. *Bruno,* 721 F.2d at 1195. Because the prosecutor's duty is as much "to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one," such improper behavior is not to be tolerated. *See Berger,* 295 U.S. at 88, 55 S.Ct. 629.

■ Moreover, both the Fifth Amendment's right to due process and the Sixth Amendment's right to counsel mandate a prosecutor to refrain from such attacks against defense counsel. As the Supreme Court observed in *Gideon v. Wainwright,* defense lawyers play a key role in ensuring that every defendant receives a fair trial—they are "necessities, not luxuries." 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Any comment by the prosecution that disparages a defendant's decision to exercise his Sixth Amendment right to counsel is thus improper. *See Bruno,* 721 F.2d at 1195; *United States v. McDonald,* 620 F.2d 559, 564 (5th Cir.1980). In addition, a defendant possesses a due process right to present his case to the jury, and a prosecutor's disparaging comments about defense counsel may impermissibly strike at this fundamental right. *Bruno,* 721 F.2d at 1195. With these principles in mind, we turn to Ollivierre's specific assertions on this point.

### 2.

In assessing Ollivierre's contention, we must first look to whether the trial court abused its discretion with respect to the comments to which objections were interposed. *Grabiec,* 563 F.2d at 319 (observing that trial court's discretion in controlling closing argument is not to be overturned absent showing of clear

through his lawyer distance himself from the bag [of drugs] as he tried to distance himself

from the scene." In these circumstances, we see nothing improper in this line of argument.

abuse). After assessing the three comments to which Ollivierre objected, we must evaluate for plain error the other seven comments on which Ollivierre now relies. *See Olano,* 507 U.S. at 732, 113 S.Ct. 1770.

3.

■■■■ We begin with the comments to which Ollivierre objected—the Running Remark, the Off Track Comment, and the Amnesia Comment—which we do not find erroneous. As we explained, Ollivierre promptly objected to the Running Remark, and the court responded with a curative instruction. *See supra* Part III.B. When Ollivierre objected to the Off Track Comment, the court sustained his objection and the prosecutor terminated that line of argument. Finally, the court overruled Ollivierre's objection to the Amnesia Comment without explanation. Although that comment, viewed in isolation, could have been improper, we are unable to say that, in context, the court abused its discretion.

4.

a.

■■■■ Turning to the seven comments that were not objected to, we can easily dispose of five of them. Viewed for plain error, there was nothing improper in the prosecutor's Distance Comment ("Mr. Ollivierre wants to now through his lawyer distance himself from the bag [of drugs] ...."), the prosecutor's remark that Ollivierre was innocent until proven guilty, or in the Argue Comment ("If neither [law nor facts are] on your side, just argue."). And viewed similarly and in context, the Distorted Facts Comment ("[Defense counsel] tries to weave in distorted facts to try to make his argument.") was not inappropriate. *See United States v. Newton,* 327 F.3d 17, 28 (1st Cir.2003) (reviewing in

context whether prosecutor's comment was improper). Indeed, Ollivierre's counsel concedes that he made factual misstatements in his closing argument. Appellant's Br. at 32–33. Finally, although the Suborn Perjury Comment ("We submit to you, ladies and gentlemen, if we wanted to [suborn perjury], we could have done a better job.") was unfortunately put, we fail to see how it improperly impugned defense counsel.

b.

■■■ Finally, two of these comments— the Straight Face Comments—improperly impugned Ollivierre's lawyer and the institutional role of defense attorneys generally. In these circumstances, the judge could well have interrupted the prosecutor's argument and admonished him for those remarks. *See Viereck v. United States,* 318 U.S. 236, 248, 63 S.Ct. 561, 87 L.Ed. 734 (1943) (observing that trial judge may sua sponte interrupt argument and admonish attorney for improper comment).

■■■ Because the Straight Face Comments, viewed in context and under the guiding principles, constitute plain error, we must assess whether they prejudicially affected Ollivierre's substantial rights, depriving him of a fair trial. In that regard, we are guided by our *Mitchell* decision, where we identified several factors that are relevant to whether an improper argument satisfies the second prong of *Chorman* (whether the defendant's substantial rights were so impacted as to deprive him of a fair trial). *United States v. Mitchell,* 1 F.3d 235, 241 (4th Cir.1993). These factors include:

(1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or

extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Id.* at 241 (internal quotation marks and citation omitted).

We begin with the first of the *Chorman* factors—whether the Straight Face Comments had a tendency to mislead the jury. The Government's response to this point is that the comments were invited by the misstatements of Ollivierre's counsel, and they thus do not warrant reversing the conviction. *See United States v. Wilson,* 135 F.3d 291, 299 (4th Cir.1998) (observing that we consider whether prosecutor's comments were invited in determining whether they were prejudicial). In *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), the Supreme Court recognized that a prosecutor's argument, even when improper, is not prejudicial if it was invited by the improper remarks of defense counsel, and if the prosecutor does no more than "right the scale." *Young,* 470 U.S. at 12–13, 105 S.Ct. 1038 (applying invited reply rule of *Lawn* ).

■ We reject the Government's contention that the invited reply rule is applicable here. This rule only provides a prosecutor "some leeway to respond to *inflammatory attacks* mounted by defense counsel," *United States v. Rodriguez–Estrada,* 877 F.2d 153, 158 (1st Cir.1989) (emphasis added), or to rebut allegations that a prosecution witness committed perjury. *Lawn,* 355 U.S. at 359–60 n. 15, 78 S.Ct. 311. The invited reply rule does not provide a prosecutor "carte blanche to engage in improper tactics" in responding to misrepresentations made by his adversary in closing argument, *United States v. Marcucci,* 299 F.3d 1156, 1166 (9th Cir.2002)— rather, such a circumstance is best addressed by a proper objection. Because the Straight Face Comments were not responsive to an inflammatory attack from defense counsel or an accusation of perjury, they are beyond the purview of the invited reply rule.

In any event, however, the Straight Face Comments did not likely mislead the jury. The evidence of Ollivierre's guilt was compelling—indeed, it was nearly overwhelming: (1) Ollivierre drove the drugs to the pre-arranged meeting place for the drug deal; (2) before showing the drugs to the undercover officer, Snoop walked to Ollivierre's vehicle, leaned into it, appeared to converse with Ollivierre, and retrieved something from the vehicle; (3) when Snoop and the undercover officer decided to complete the transaction on the dirt road, Snoop told Ollivierre to follow them, and he complied; (4) as soon as law officers appeared, Ollivierre fled, and he led the officers on a lengthy and dangerous chase; (5) after the chase ended, Ollivierre continued to flee on foot; (6) he was carrying over $1,700 in cash when he was apprehended in a tree; and finally, (7) after Ollivierre was released on bond, he absconded and remained a fugitive for five years. In the context of this compelling evidence, we are unable to conclude that the jury was misled by the prosecutor's isolated criticisms of the institutional role of defense attorneys. And we also are unable to conclude that the prosecutor deliberately made this argument in an effort to divert the jury's attention to extraneous matters. Thus, the Straight Face Comments did not so infect Ollivierre's trial with unfairness as to result in a denial of due process.[8] *See Mitchell,* 1 F.3d at 241.

8. Ollivierre maintains that, even if the prosecutor's comments, viewed in isolation, did not

### D.

Finally, Ollivierre contends that, in four instances, the prosecutor improperly vouched for the credibility of government witnesses. Importantly, however, Ollivierre failed to object to any of these comments, and our review of them is for plain error only. *See Adam,* 70 F.3d at 780. A prosecutor improperly vouches for a witness when he indicates his personal belief in her credibility or honesty. *Sanchez,* 118 F.3d at 198; *United States v. Lewis,* 10 F.3d 1086, 1089 (4th Cir.1993).

In the circumstances of this trial, the first two Vouching Comments were not improper because the prosecutor did not indicate his personal belief in the credibility or honesty of his witnesses. *See Sanchez,* 118 F.3d at 198 (vouching improper only when prosecutor indicates his personal belief in credibility of witness). The prosecutor prefaced each of these comments with "We submit to you," or "I submit to you," indicating that the comments were argument—not personal belief.

Ollivierre also maintains that the prosecutor improperly vouched for a government witness when, *in rebuttal,* he made the third and fourth Vouching Comments. Ollivierre's lawyer had asserted in closing argument that Caldwell, a government witness, did not testify truthfully. *See, e.g.,* J.A. 211 ("I submit to you that Bridgette Caldwell … is not credible." "[S]he was not believable."); J.A. 216 ("There is ample evidence that either

[Bridgette Caldwell] is very, very confused or she is not telling the truth on the stand. I submit this is the kind of thing you can't be mistaken about, *so she must not be telling the truth.*") (emphasis added). Because the prosecutor's rebuttal argument was permissibly responsive to accusations that Caldwell had lied, the invited reply rule is implicated. *Lawn,* 355 U.S. at 359–60 n. 15, 78 S.Ct. 311 (applying invited reply rule in assessing whether prosecutor improperly vouched for government witness). The circumstances underlying these comments are similar to those of *Lawn*—the defense lawyer had there suggested that the government's key witness was a liar, and the prosecutor responded by arguing that the witness was truthful. *Id.* As in *Lawn,* these comments were invited and they did no more than seek to "right the scale." *Young,* 470 U.S. at 12–13, 105 S.Ct. 1038. Thus, these rebuttal comments also were not erroneous. As a result, we reject the contention that the prosecutor improperly vouched for his witnesses.

### IV.

Because Ollivierre has failed to show that his substantial rights were affected, we decline to reverse on the basis of improper argument. Furthermore, because the prosecutor's argument did not constitute prejudicial error, the trial court did not abuse its discretion in denying Ollivierre's motion for a new trial.

---

prejudicially affect his substantial rights, he was—when the comments are viewed cumulatively—denied his Fifth Amendment right to a fair trial. Under the "cumulative error doctrine," however, we assess the combined effect *of errors* made during his trial, and a defendant must show that the cumulative impact of these errors affected the outcome of the proceedings. *See United States v. Mar-*

*tinez,* 277 F.3d 517, 532 (4th Cir.2002) (applying cumulative error doctrine); *Olano,* 507 U.S. at 734, 113 S.Ct. 1770 (observing that, under Rule 52(b), defendant bears burden of persuasion with respect to prejudice). Viewing the record as a whole, the cumulative impact of the Straight Face Comments did not affect the outcome of Ollivierre's trial.

Pursuant to the foregoing, we reject Ollivierre's appeal and affirm his conviction and sentence.

*AFFIRMED.*