**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

**No. 04-5048**

————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KEVIN BATTS, a/k/a K-Smooth,

Defendant - Appellant.

————————————

**No. 04-5049**

————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CHRISTOPHER M. BROWN,

Defendant - Appellant.

————————————

**No. 04-5050**

————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARIO L. ALLEN,

                                        Defendant - Appellant.

                            ─────────────

                            **No. 04-5051**

                            ─────────────

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

KEVIN LANGSTON, a/k/a Little One,

                                        Defendant - Appellant.

                            ─────────────

                            **No. 04-5052**

                            ─────────────

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

            versus

ANTOINE D. ALLEN, a/k/a Ski,

                                        Defendant - Appellant.

                            ─────────────

Appeals from the United States District Court for the Eastern
District of Virginia, at Richmond.  James R. Spencer, District
Judge.  (CR-03-394)

                            ─────────────

Argued:  February 3, 2006          Decided:  March 21, 2006

                            ─────────────

2

Before WILKINSON, LUTTIG, and MICHAEL, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

**ARGUED:** Charles Manley Allen, Jr., GOODMAN, ALLEN & FILETTI, Glen Allen, Virginia, for Appellants. Roderick Charles Young, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Carolyn V. Grady, EPPERLY & FOLLIS, P.C., Richmond, Virginia, for Appellant Christopher M. Brown; Jeffrey L. Everhart, RICE, EVERHART & BABER, Richmond, Virginia, for Appellant Mario L. Allen; Samuel P. Simpson, V, Richmond, Virginia, for Appellant Kevin Langston; James Mark Nachman, NACHMAN & KAUFMAN, L.L.P., Richmond, Virginia, for Appellant Antoine D. Allen. Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Kevin Batts, Christopher Brown, Kevin Langston, Mario Allen, and Antoine Allen appeal their convictions and sentences for Racketeer Influenced and Corrupt Organizations Act (RICO) conspiracy and conspiracy to distribute cocaine base. We affirm the convictions. Applying United States v. Booker, 543 U.S. 220 (2005), we vacate the sentences of Batts, Brown, and Langston and remand their cases for resentencing. We affirm the sentences of Mario Allen and Antoine Allen.

I.

A grand jury in the Eastern District of Virginia handed down a third superseding indictment against the five defendants in March 2004. The indictment charged two counts: (1) RICO conspiracy, 18 U.S.C. § 1962(d), and (2) conspiracy to distribute and possess with intent to distribute cocaine base, 21 U.S.C. § 846. The indictment alleged the following. The defendants were members of the Third Ward Gang, a street gang that engaged in extensive open-air sales of cocaine base, or crack, in a section of Petersburg, Virginia. The gang was organized into three factions: the Hill Top Posse, the Bottom, and the Dirty Spurs. Together the factions protected their sales territory and promoted their identity through violent acts. Among these acts were the murder of Robert Brabson, Jr. and the attempted murder of DeAndrew Carter.

4

The defendants pleaded not guilty and proceeded to trial. The district court's pretrial discovery order required the government to provide written summaries of its expert testimony no more than seven days prior to trial. The government identified an FBI agent, John Lanata, as a gang expert, but the government's written submission did not identify the bases and reasons for his opinions as required by Rule 16 of the Federal Rules of Criminal Procedure. Before trial the defendants objected to Lanata's testimony under both the procedural rule and Rule 702 of the Federal Rules of Evidence. The district court denied both the procedural objection and the evidentiary objection, allowing Lanata to testify at trial.

The defendants moved for acquittal at the conclusion of the government's case-in-chief, and the district court denied the motions. At closing argument defense counsel contended that to prove Mario Allen and Antoine Allen committed first-degree murder in shooting Brabson (a racketeering activity under Count 1), the government was required to show that they intended to kill Brabson. In its rebuttal the government argued that the concept of transferred intent allowed the jury to find an intent to kill Brabson based on an intent to kill Carter, the shooters' actual target.

The jury returned guilty verdicts as to all defendants on the two counts. In November 2004, pursuant to <u>United States v.</u>

5

Hammoud, 378 F.3d 426 (4th Cir.) (order), opinion issued by 381 F.3d 316, 353-54 (4th Cir. 2004) (en banc), cert. granted and judgment vacated, 125 S. Ct. 1051 (2005), the district court announced two sentences for each defendant:  the actual sentence treating the United States Sentencing Guidelines as mandatory, and an alternate sentence treating the guidelines as advisory.  For Mario Allen and Antoine Allen, the actual and the alternate sentences were identical sentences of life in prison; for the remaining defendants, each alternate sentence was shorter than the actual sentence.

II.

The defendants first argue that the trial evidence was insufficient to sustain the jury's verdict of guilt.  In particular, the defendants contend that there was not enough evidence to prove (A) Count 1's allegation that the Third Ward Gang was a racketeering organization subject to RICO, or (B) Count 2's allegation that the gang members had formed an agreement to distribute drugs.  The jury's verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."  United States v. Glasser, 315 U.S. 60, 80 (1942).

A.

The defendants argue that they were entitled to acquittal on the RICO conspiracy count because there was not enough evidence to show the Third Ward Gang was an "enterprise" covered by the statute. They claim a lack of evidence that the gang had a discernible hierarchy with superior and subordinate members. They also claim that in selling drugs there was competition, not cooperation, among the gang members.

A RICO "enterprise" is a "group of persons associated together for a common purpose of engaging in a course of conduct," which is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981). We have held that a RICO enterprise is characterized by "continuity, unity, shared purpose and identifiable structure." United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994).

We affirm because substantial evidence supports the jury's conclusion that the Third Ward Gang was a racketeering enterprise. Although the defendants assume an "identifiable structure" can only be proven by evidence of a distinct hierarchy, they cite no precedent imposing such a requirement. Nor does internal competition prevent the gang from being an enterprise. See United States v. Fernandez, 388 F.3d 1199, 1224 (9th Cir. 2004) (conflict between gang factions supported enterprise

7

characterization because opponents were jockeying for "position within and control of the organization").

The government's witnesses testified that the common purpose of the gang was dealing crack cocaine, a goal pursued regularly for many years. For example, witness Ernest Booker testified that gang members "looked out for the police for one another" and protected each other when they went to clubs. J.A. 539. He also testified that when a member ran out of drugs he routinely referred his customers to other gang members. In addition, witness Ronald Blowe testified that gang members took turns selling "[s]o everybody can get a sale," J.A. 672, and that some gang members gave orders that others obeyed. The evidence also showed Third Ward Gang members committed violent crimes to intimidate rivals (such as the "Carter Boys" from the city's Fifth Ward) and preserve turf.

This evidence was sufficient to prove that the Third Ward Gang was an ongoing organization with a structure and the shared purpose of enriching members and preserving the gang's power over its section of Petersburg. In sum, substantial evidence supports the jury's guilty verdicts on Count 1.


B.

The defendants argue that the evidence was insufficient to sustain their convictions on Count 2 because they often competed

8

with one another in selling drugs and their common association with the gang is not enough to show agreement. To prove conspiracy to distribute a controlled substance, the government must establish that: (1) two or more persons agreed to distribute the substance; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became part of the conspiracy. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc).

The government's evidence was sufficient to establish that the defendants all were members of the Third Ward Gang, that they sold drugs within a defined territory, and that they barred outsiders from selling drugs within that territory. For example, witness Fred Jones identified all defendants (except Batts) as his "fellow drug dealers," J.A. 451, and he identified Batts as a member of the Spurs sub-gang. Jones also indicated that only Third Ward Gang members were allowed to sell within the gang's defined territory. This evidence shows that gang members tacitly agreed to maintain their control over the crack "market" in the neighborhood. The defendants cooperated by, for example, "look[ing] out for the police for one another." J.A. 539.

Thus, substantial evidence supports the jury's verdicts on Count 2 that convicted the defendants of conspiracy to deal in crack.

III.

The defendants next argue that they suffered prejudice when the district court (A) allowed expert Lanata to testify, and (B) permitted the government to explain the concept of transferred intent in its rebuttal closing argument even though the jury never received an instruction on that concept.

A.

The defendants press two arguments that Lanata's expert testimony for the government should have been excluded. First, they argue that the government's brief disclosure of the content of Lanata's opinion did not comply with Fed. R. Crim. P. 16(a)(1). The government retorts that it obeyed the rule by providing Lanata's name and curriculum vitae four months before trial, summarizing his testimony in responding to the defense motion to exclude, and making him available for cross-examination at the pretrial evidentiary hearing.

Fed. R. Crim. P. 16 (a)(1)(G) requires that the government furnish, upon the defendant's request, a written summary of any expert testimony that the government intends to use under Fed. R. Evid. 702, 703, or 705 during its case-in-chief at trial. The summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. Even where there has been an abuse of discretion, reversal is

10

inappropriate unless the defendant establishes prejudice by demonstrating that it is likely that had the government complied with the discovery rule (not had the evidence been suppressed), the verdict would have been different. See United States v. Chastain, 198 F.3d 1338, 1348 (11th Cir. 1999).

Assuming without deciding that the government's disclosure did not satisfy the requirements of Fed. R. Crim. P. 16(a)(1)(G) because it did not provide the bases and reasons for Lanata's conclusions, we are not persuaded that the defendants were prejudiced by this error. Defendant Brown's counsel questioned Lanata at the pretrial hearing, and all the defendants had access to the information elicited. Lanata's responses to these questions furnished counsel with ample material for meaningful cross-examination at trial, and counsel's decision not to capitalize on that material is not fairly traceable to government conduct. Because the error, if any, was harmless, we cannot reverse on this basis.

Second, the defendants argue that Lanata's opinion did not meet the requirements of Fed. R. Evid. 702 for the admission of expert testimony because Lanata did not have scientific expertise. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). District court evidentiary decisions are reviewed for abuse of discretion. United States v. Forrest, 429 F.3d 73, 79 (4th Cir. 2005).

Law enforcement officials are allowed, within the discretion of district courts, "to testify as experts concerning the modus operandi of drug dealers in areas concerning activities which are not something with which most jurors are familiar." United States v. Sarabia-Martinez, 276 F.3d 447, 452 (8th Cir. 2002); see United States v. Boissoneault, 926 F.2d 230, 232 (2d Cir. 1991) (same). Allowing expert testimony on gangs who deal drugs also falls within this discretion. A witness relying solely or primarily on experience, of course, "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts," because "the trial court's gatekeeping function requires more than simply taking the expert's word for it." Fed. R. Evid. 702 Advisory Committee's Notes to 2000 Amendments (citations omitted).

Here, the district court amply satisfied the gatekeeping standard. For example, the court asked Lanata at the pretrial hearing what texts he used in teaching his gang course to new FBI recruits, and the court clarified to the parties that Lanata's expertise on gangs generally did not constitute expertise on the Third Ward Gang in particular. Based on the extent of this inquiry, we conclude that the district court did not abuse its discretion in admitting Lanata's testimony under Rule 702.

Thus, admission of the expert testimony was proper.

12

B.

The defendants contend that the district court erred in permitting the government's rebuttal argument at closing that the transferred intent concept applied to the Brabson murder. Virginia law explains this concept as follows: "[I]f an accused shoots at another intending to kill him, and a third person is killed because of the act, that same intent follows the bullet and is transferred to the killing of the third person, even if such death was accidental or unintentional." Riddick v. Commonwealth, 308 S.E.2d 117, 119 (Va. 1983). The district court itself never instructed the jury on transferred intent.

As we stated in United States v. Tipton, 90 F.3d 861 (4th Cir. 1996),

> [t]here is no question of the court's discretionary power to give post-argument instructions "to remedy omissions in pre-argument instructions or to add instructions necessitated by the arguments." Fed. R. Crim. P. 30 advisory committee's note to 1987 Amendment. But the rule plainly contemplates that parties will know what the court will instruct before they make their arguments. See id.

90 F.3d at 886. In crafting their closing arguments, the defendants understandably relied on the initial jury instructions, which omitted the transferred intent theory. (The government's contention that it was entitled to explain transferred intent to the jury because the defense closing argument invited this reply is not persuasive. The invited reply rule covers only prosecutorial comments "responsive to an inflammatory attack from defense counsel

13

or an accusation of perjury." United States v. Ollivierre, 378 F.3d 412, 422 (4th Cir. 2004), vacated on other grounds by Ollivierre v. United States, 543 U.S. 1112 (2005)).

The defendants argue that only by applying the transferred intent concept could the jury have concluded Brabson's murder was intentional, and that this application was not legitimate because the jury's understanding of the concept came not from the district court's instructions but from the government's rebuttal. This claim does not, however, warrant reversal of the defendant's RICO conspiracy convictions. The government rebuttal argument simply did not misstate any legal rule or suggest that the government's burden of proof fell below the standard of beyond a reasonable doubt. It may well have been wiser for the district court to exercise its "discretionary power," Tipton, 90 F.3d at 886, to give a post-argument instruction, but we cannot say that the court's failure to do so here amounted to reversible error. Fed. R. Crim. P. 52(a).

IV.

Finally, the defendants argue that their sentences contravened Booker. Under Booker there are two types of sentencing errors. First, pursuant to a mandatory guidelines regime, "a sentencing court commits Sixth Amendment error if it enhances a sentence beyond the maximum authorized by facts found by a jury

14

beyond a reasonable doubt or admitted by the defendant." United States v. Rodriguez, 433 F.3d 411, 414 (4th Cir. 2006). This is because the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." U.S. Const. amend. VI. Second, "[a] court commits statutory error if it treats the Guidelines as mandatory, rather than as advisory." Rodriguez, 433 F.3d at 414. The defendants appear to assert both types of error.

By objecting to their sentences based on Blakely v. Washington, 542 U.S. 296 (2004), each defendant preserved his Booker claim. Rodriguez, 433 F.3d at 415. We therefore review for harmless error. The government bears the burden in harmless constitutional error review of showing beyond a reasonable doubt that the error did not affect the defendant's substantial rights. United States v. Mackins, 315 F.3d 399, 405 (4th Cir. 2003). An error that affected the outcome of the proceedings is one that affected substantial rights. United States v. Stokes, 261 F.3d 496, 499 (4th Cir. 2001). We may disregard an error in sentencing if we are certain that the error "did not affect the district court's selection of the sentence imposed." Williams v. United States, 503 U.S. 193, 203 (1992).

Although the district court sentenced the defendants under a mandatory guidelines regime, we conclude that this error was harmless as to defendants Mario Allen and Antoine Allen.

15

Because the district court announced that even under an advisory regime it would impose the same life sentence that it had ascertained for these defendants by treating the Guidelines as mandatory, the outcome of the sentencing proceedings was not changed by the error, so no substantial rights were affected. We accordingly affirm these life sentences.

The government concedes, however, that it cannot show that the error as to defendants Batts, Brown, and Langston was harmless because the alternative sentence (treating the guidelines as advisory) that the district court announced for each was shorter than the sentence actually imposed. We accordingly vacate the sentences as to these defendants and remand for resentencing. United States v. Hughes, 401 F.3d 540, 546-47 (4th Cir. 2005).

V.

For the foregoing reasons we affirm the defendants' convictions. We vacate the sentences of Batts, Brown, and Langston and remand for resentencing, but we affirm the sentences of Mario Allen and Antoine Allen.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED