PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHARLES E. JONES, III, a/k/a
Chuckie,

*Defendant-Appellant.*

No. 05-5243

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CR-05-24)

Argued: October 26, 2006

Decided: December 22, 2006

Before WILKINSON, NIEMEYER, and WILLIAMS,
Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Niemeyer and Judge Williams joined.

---

## COUNSEL

**ARGUED:** William Raymond Metzner, Sr., Wheeling, West Virginia, for Appellant. David J. Perri, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Rita R. Valdrini, Acting United States Attorney, Wheeling, West Virginia, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

This case arises from a prosecution under 18 U.S.C. § 2423(a) (2000 & Supp. 2003), prohibiting the transportation of a minor across state lines with the intent that the minor engage in prostitution. Defendant Charles Jones was convicted for his participation in a scheme in which a thirteen-year-old girl was transported from Ohio to West Virginia to act as a prostitute at a truck stop. On appeal, Jones contends that conviction under § 2423(a) requires the government to prove that he knew the victim was underage. He also argues that remarks made by the prosecuting attorney during closing argument were improper and substantially prejudiced his right to a fair trial. Neither argument has merit. Defendant's interpretation of § 2423(a) contravenes basic tenets of statutory construction and subverts Congress' intent to protect minors against sexual exploitation. In addition, the challenged remarks by the prosecuting attorney were not improper. We thus affirm the judgment of the district court.

I.

Defendant Charles E. Jones III was indicted by a federal grand jury in the United States District Court for the Northern District of West Virginia for one count of Conspiracy to Transport a Minor Across State Lines for Sexual Purposes (18 U.S.C. §§ 371, 2423(a)) and three counts of Aiding and Abetting Transportation of a Minor Across State Lines for Sexual Purposes (18 U.S.C. §§ 2, 2423(a)). The government alleged that Jones and an associate, Jamie Derek Bennett, transported a thirteen-year-old girl from Ohio to West Virginia and prostituted her at a truck stop as a means of funding the purchase of alcohol and illegal drugs.

In September of 2003, Jones and Bennett met a thirteen-year-old runaway from Wheeling, West Virginia, in Bellaire, Ohio. For three consecutive nights beginning on or around September 15, 2003, Jones and Bennett transported the victim to the Dallas Pike Truck Stop in West Virginia in order for her to perform sex acts on truckers for money. Bennett and Jones provided the victim with makeup, skimpy clothes belonging to Bennett's ex-girlfriend, and condoms and

douches purchased with money provided by Jones. They developed a pricing scale for her to use for various sex acts. Jones provided her with a fake ID.

On each night at the Truck Stop, the defendant and Bennett waited in Bennett's car while the victim went out and displayed herself for the patrons of the Truck Stop. She performed sex acts inside truck cabs and, on one occasion, in a room in a nearby motel. Each night, the victim periodically returned to the car and gave the money she had earned to defendant Jones; often, Jones and Bennett would encourage her to go make more. The victim made hundreds of dollars, most of which was taken from her by Jones and Bennett. At the end of the night, the three would return to Bellaire and purchase alcohol and drugs with the prostitution proceeds. On the third night, the victim had a dangerous encounter with a "customer" and twisted her ankle in flight. At that point, she decided that she did not want to engage in any more prostitution.

At trial, the victim and Bennett testified that both Bennett and defendant Jones were present for all three trips to the Truck Stop. A companion named Jeffrey Joe Hall testified to having been present for two trips. The defendant's cousin, Charles Patterson, testified that on the first trip Jones stopped at his house to ask directions to the Truck Stop. Several witnesses testified that they saw the victim in the presence of Jones in Bellaire and heard him offer her sexual services to associates there. At the time and months afterward, Jones bragged to witnesses about "pimping out" the victim at Dallas Pike Truck Stop.

On Sunday, September 21, 2003, Bellaire police officers found the victim. The police spoke to Jones, who made a written statement that he, Bennett, and the victim had driven to Dallas Pike in order for the victim to visit someone, but he mentioned nothing about prostitution. Bennett was the first participant to disclose the prostitution scheme, and he eventually pled guilty to conspiracy and testified at trial. Hall also admitted his involvement, pled guilty to Lying to a Federal Agent, and testified at trial. Patterson had no involvement in the prostitution scheme and testified at trial.

At the close of a three-day jury trial on September 15, 2005, the jury convicted Jones on all counts. On December 5, 2005, the district

court conducted a sentencing hearing at which it sentenced the defendant to 63 months of imprisonment.

On appeal, defendant argues that the district court erred in determining that 18 U.S.C. § 2423(a) does not require proof that the defendant knew that the victim was under eighteen years of age. He also argues that during closing argument, the prosecutor made improper comments which prejudicially affected his right to a fair trial.

## II.

Jones first argues that 18 U.S.C. § 2423(a) requires the government to prove that the defendant knew that the alleged victim was under eighteen years of age. At the time of defendant Jones' alleged offense,[1] § 2423(a) provided:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 5 years and not more than 30 years.

18 U.S.C. § 2423(a). The defendant contends that "knowingly" applies to the clause "who has not attained the age of 18 years" and thus that the defendant's knowledge of the victim's minority is an element of the offense which the government must prove to convict. We disagree. In doing so, we join the four other circuits to have considered this question, all of which have stated that the victim's minor sta-

---

[1] 18 U.S.C. § 2423(a) has since been amended to provide:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

tus is instead a fact which the prosecution must prove and for which the defendant is responsible. *See United States v. Griffith*, 284 F.3d 338, 351 (2d Cir. 2002); *United States v. Taylor*, 239 F.3d 994, 997 (9th Cir. 2001); *United States v. Scisum*, 32 F.3d 1479, 1485-86 (10th Cir. 1994); *United States v. Hamilton*, 456 F.2d 171, 173 (3d Cir. 1972) (per curiam). In the time since other circuit courts have interpreted § 2423(a) as we do today, Congress has amended § 2423 no less than nine times, never changing it to require the government to establish the defendant's knowledge of the alleged victim's age. *See* Pub. L. No. 109-248, 120 Stat. 613 (2006); Pub. L. No. 108-21, 117 Stat. 652 (2003); Pub. L. No. 107-273, 116 Stat. 1808 (2002); Pub. L. No. 105-314, 112 Stat. 2976 (1998); Pub. L. No. 104-294, 110 Stat. 3499 (1996); Pub. L. No. 104-71, 109 Stat. 774 (1995); Pub. L. No. 103-322, 108 Stat. 2037 (1994); Pub. L. No. 99-628, 100 Stat. 3510 (1986); Pub. L. No. 95-225, 92 Stat. 7 (1978).

## A.

The Supreme Court has "long recognized that determining the mental state required for commission of a federal crime requires 'construction of the statute and . . . inference of the intent of Congress.'" *Staples v. United States*, 511 U.S. 600, 605 (1994) (citation omitted). In this case, construction of the statute demonstrates that it does not require proof of the defendant's knowledge of the victim's minority. It is clear from the grammatical structure of § 2423(a) that the adverb "knowingly" modifies the verb "transports." Adverbs generally modify verbs, and the thought that they would typically modify the infinite hereafters of statutory sentences would cause grammarians to recoil. We see nothing on the face of this statute to suggest that the modifying force of "knowingly" extends beyond the verb to other components of the offense. "A more natural reading of the statute . . . is that the requirement of knowledge applies to the defendant's conduct of transporting the person rather than to the age of the person transported." *Taylor*, 239 F.3d at 997.

Our interpretation gains further support from a related provision of the same statute, 18 U.S.C. § 2421 (2000). While § 2423 is entitled "Transportation of minors," § 2421 is entitled "Transportation generally" and provides:

> Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2421. Section 2421 is virtually identical to § 2423(a) but for its lack of an age element. In the context of § 2421, the adverb "knowingly" obviously modifies the verb, "transports." It would be implausible to suggest that "knowingly" in § 2421 is intended to modify the noun "individual." So, too, would it be implausible to suggest that, in § 2423(a), where the noun "individual" is modified by the clause "who has not attained the age of 18 years," the term "knowingly" suddenly applies to both the noun and its dependent clause. Not only is such a reading grammatically odd, but it would have the perverse effect of making it much more difficult to prove a violation of § 2423(a) than of § 2421. It is unlikely that, in providing extra protection for minors in § 2423(a), Congress intended to make the evidentiary burdens of that provision disproportionate to those of § 2421. The more natural reading of § 2421 and § 2423(a) is that the adverb "knowingly" serves the same function in each: to modify the verb "transports."

Our holding today is also consistent with a large body of circuit precedent recognizing that a statutory mens rea requirement does not always apply to each factual element of a criminal offense. With regard to a similar statute, this court has held that conviction under 21 U.S.C. § 861(a)(3) for receiving a controlled substance from a person under 18 years of age does not require proof that the defendant knew the other party was underage. *United States v. Cook*, 76 F.3d 596, 602 (4th Cir. 1996). Similarly, this court has held that to establish a knowing violation of 18 U.S.C. § 922(g), which criminalizes possession of firearms by prohibited persons, the United States must prove the defendant's knowledge with respect to possession of the firearm but not with respect to other elements of the offense. *See* 18 U.S.C. §§ 922(g), 924(a)(2)(2000). *See, e.g.*, *United States v. Frazier-El*, 204 F.3d 553, 561 (4th Cir. 2000) (government need not prove that defendant knew possession of particular type of firearm was pro-

hibited); *United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir. 2000) (government need not establish that defendant knew possessing a firearm was illegal); *United States v. Bostic*, 168 F.3d 718, 722-23 (4th Cir. 1999) (same); *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (en banc) (government need not prove defendant's knowledge of his felony status or firearm's interstate nexus).

Finally, our interpretation is the only one consistent with any reasonable "inference of the intent of Congress." *Staples*, 511 U.S. at 605 (internal quotation marks omitted). Under § 2423(a), "the fact that the individual being transported is a minor creates a more serious crime in order to provide heightened protection against sexual exploitation of minors." *Taylor*, 239 F.3d at 997 (citing H.R. Rep. No. 105-557 (1998)(justifying increased penalties under § 2423(a)). It is reasonable to conclude that "the age of the victim simply subjects the defendant to a more severe penalty in light of Congress' concern about the sexual exploitation of minors." *Id. See also Hamilton*, 456 F.2d at 173.

The defendant's interpretation, meanwhile, would strip the statute of its clear purpose: the protection of minors. If the prosecution were required to prove knowledge with regard to the victim's age, it would be the rare defendant who would not claim to have mistaken the victim for an adult. Imposing such a mens rea requirement would be tantamount to permitting adults to prey upon minors so long as they cultivate ignorance of their victims' age. But "the statute is intended to protect young persons who are transported for illicit purposes, and not transporters who remain ignorant of the age of those whom they transport." *Taylor*, 239 F.3d at 996. It would be nonsensical to require proof of knowledge of the victim's age when the statute exists to provide special protection for all minors, including, if not especially, those who could too easily be mistaken for adults. Such minors are still minors, "regardless of what [they] say[ ] or how [they] appear[ ]." *Id.* at 997. For this reason, "[i]gnorance of the victim's age provides no safe harbor from the penalties in 18 U.S.C. § 2423(a)." *Id.*

B.

The defendant argues that § 2423(a) should be construed by analogy to the federal child pornography statutes, 18 U.S.C. § 2252(a) and

18 U.S.C. § 2252(A). In *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994), the Supreme Court held that the term "knowingly" in § 2252 extends to the minority status of the individuals depicted. The Court stated that this was not "[t]he most natural grammatical reading" of the statute, *id.* at 68, but nevertheless "the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct," *id.* at 72. In the case of non-obscene pornographic material, "one would reasonably expect to be free from regulation when trafficking in sexually explicit, though not obscene, materials involving adults. Therefore, the age of the performers is the crucial element separating legal innocence from wrongful conduct." *Id.* at 73. Because the minority status of the depicted individuals is what separates criminal child pornography from lawful material, knowledge that the pornography depicts minors is properly an element to be required for a defendant's conviction. *Id.* at 72-73. *See also United States v. Cedelle*, 89 F.3d 181, 185 (4th Cir. 1996).

Similarly, in *Staples v. United States*, 511 U.S. 600 (1994), the Supreme Court addressed the proper construction of 26 U.S.C. § 5861(d), which criminalizes possession of an unregistered "firearm," where the term "firearm" is defined to include automatic but not all semiautomatic weapons. 26 U.S.C. §§ 5845(a), (b). The Court held that, where a defendant is arrested for possession of a semiautomatic rifle modified for fully automatic fire, the prosecution must establish that defendant knew the gun was capable of firing automatically. The Court reasoned that "if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect." 511 U.S. at 620; *see id.* at 611-12.

In this case, the reasoning of *X-Citement Video* and *Staples* is inapposite. "The Supreme Court's holding in *Staples*, as well as in the related case of [*X-Citement Video*] was directed at awareness of the elements that define circumstances upon which criminality turns." *Bostic*, 168 F.3d at 723. But in § 2423(a), the minority of the victim is hardly a factor that distinguishes the defendant's actions from "innocent conduct." *X-Citement Video*, 513 U.S. at 72. To the contrary, "the transportation of *any* individual for purposes of prostitution or

other criminal sexual activity is already unlawful under federal law." *Taylor*, 239 F.3d at 997 (citing 18 U.S.C. § 2421) (emphasis added). *See, e.g.*, *Cook*, 76 F.3d at 601 ("[T]here is no reason to apply the presumption in favor of a knowledge requirement [to 21 U.S.C. § 861(a)(3)] to protect otherwise innocent conduct for the obvious reason that receiving illegal drugs is not otherwise innocent conduct."); *United States v. LaPorta*, 46 F.3d 152, 158 (2d Cir. 1994) ("Arson is hardly 'otherwise innocent conduct.'") (construing 18 U.S.C. § 1361). Because an individual "is already on notice that he is committing a crime when he transports an individual of any age in interstate commerce for the purpose of prostitution," *Griffith*, 284 F.3d at 351, it is both reasonable and just to conclude that "the transporter assumes the risk that the victim is a minor." *Taylor*, 239 F.3d at 997.

For these reasons, under § 2423(a) the government is not required to establish the defendant's knowledge of the alleged victim's age. The district court thus did not err in either its ruling on the government's motion in limine or its instructions to the jury.

### III.

Jones also contends that, in closing argument, the prosecuting attorney made two improper comments which were prejudicial to the outcome of the case. Comments by a prosecutor can constitute grounds for reversal where the comments were improper and where they so prejudicially affected the defendant's substantial rights as to deprive him of a fair trial. *See United States v. Ollivierre*, 378 F.3d 412, 420 (4th Cir. 2004), *sentence vacated under Booker*, 543 U.S. 1112 (2005); *United States v. Curry*, 993 F.2d 43, 45 (4th Cir. 1993); *United States v. Chorman*, 910 F.2d 102, 113 (4th Cir. 1990).[2]

---

[2]If a court finds the prosecution's remarks to be improper, their prejudicial effect is assessed through a consideration of a number of factors, including (1) the degree to which the remarks tended to mislead the jury or prejudice the accused; (2) whether the remarks were isolated or extensive; (3) the strength of the evidence supporting guilt in the absence of the remarks; (4) whether the comments were deliberately placed in front of the jury to divert attention to extraneous matters; (5) whether the remarks were invited by improper conduct of defense counsel; and (6)

A.

In the first challenged comment, the prosecuting attorney during closing argument asked the jury, "Ladies and gentlemen, if [the defense] had real evidence, don't you think they would have presented it to you?" The defendant alleges that this remark was an improper comment upon the defendant's failure to testify on his own behalf.

"The Fifth Amendment precludes a prosecutor from commenting to a jury on the failure of an accused to testify in his own defense." *Ollivierre*, 378 F.3d at 419. In considering whether a prosecutor's words constitute a comment on the defendant's failure to testify, this court asks, "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" *United States v. Francis*, 82 F.3d 77, 78 (4th Cir. 1996) (quoting *United States v. Anderson*, 481 F.2d 685, 701 (4th Cir. 1973)). To answer these questions, the court evaluates the comment "in the context in which it was made." *United States v. Percy*, 765 F.2d 1199, 1204 (4th Cir. 1985).

The government contends that the prosecuting attorney's remark referred to an alternative factual scenario presented by defense counsel in his closing argument. During closing argument, defense counsel told the jury, "[I]f there is a scenario that you can reasonably believe, not proven beyond a reasonable doubt, but that it is possible that this happened, that explains this week without the defendant having committed a crime, then you are going to have to acquit. And I am going to suggest a scenario to you. . . ."

Defense counsel went on to outline a sequence of events wherein the victim and Jamie Derek Bennett created the prostitution scheme without the defendant's knowledge. Defense counsel asserted that the

---

whether curative instructions were given to the jury. *See United States v. Wilson*, 135 F.3d 291, 299 (4th Cir. 1998). While we hold that the challenged comments were not improper, even if they were somehow deemed error, they are harmless and would not justify overturning the jury's verdict.

defendant went on the first trip to the truck stop unaware of the prostitution scheme and was not present at all for the second and third trips. Defense counsel suggested that the defendant eventually deduced that the victim was a runaway minor and decided to have nothing more to do with her. The girl, meanwhile, when located by the police, decided to "burn" her former associates because she was angry at them. Defense counsel concluded his closing argument by stating, "I submit that when you go into deliberation and if you choose to start talking and running scenarios and how you do deliberations is your business, but if you run scenarios, there are numerous situations that you can — that you can determine that this individual didn't know what was going to happen on trip one, was reasonable, didn't go on trip two, didn't go on trip three."

During the trial, the defense presented seven witnesses, none of whom offered any testimony substantiating the alternative factual scenario presented by defense counsel in closing argument. Cross-examination of the prosecution's witnesses similarly failed to elicit support for this scenario. The government contends that it was this failure to substantiate the alternative scenario to which the prosecuting attorney referred in asking, "[I]f they had real evidence, don't you think they would have presented it to you?"

We agree that the remark, in context, was not intended to comment on the defendant's failure to testify, nor would the jury naturally and necessarily take it as such. *See Francis*, 82 F.3d at 78. A comment on the weaknesses of the defense's case is not necessarily, or even ordinarily, a comment upon the defendant's failure to testify. *See Percy*, 765 F.2d at 1204-05 (statement that prosecution's case remained "unrefuted and unrebutted" was not a comment on failure to testify); *Anderson*, 481 F.2d at 701 (question "What do the defendants say?" not a comment on failure to testify). *See also United States v. Glantz*, 810 F.2d 316, 321-22 (1st Cir. 1987) (comments on lack of evidence were permissibly directed at weakness of defense's theory). To view such general comments on the inadequacies of an opponent's case as improper is to strike at the heart of the adversary system. Adversaries are supposed to expose the weakness of each other's evidence, and the prosecution committed no error in doing just that.

B.

Also during closing argument, the prosecuting attorney stated to the jury, "[Y]ou can be confident that [witness Jamie Derek Bennett] is telling the truth about this conspiracy. You know why? Because he pled to it." Defense counsel asked to approach the bench and argued that the statement was improper. The judge agreed and immediately told the jury to disregard the last statement by the prosecutor. The defendant contends that the prosecuting attorney's statement constituted improper vouching which so prejudicially affected the defendant's substantial rights as to deprive him of a fair trial.

"Vouching occurs when the prosecutor indicates a personal belief in the credibility or honesty of a witness." *United States v. Sullivan*, 455 F.3d 248, 259 (4th Cir. 2006) (quoting *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997)).**[3]** "[P]resenting evidence on a witness' obligation to testify truthfully pursuant to an agreement with the government and arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper vouching." *United States v. Collins*, 415 F.3d 304, 308 (4th Cir. 2005) (quoting *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990)). Reference to a plea agreement "becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony." *Id.* (quoting *Bowie*, 892 F.2d at 1498).

In this case, the prosecuting attorney's comment did not convey, either implicitly or explicitly, an expression of the prosecutor's or the government's opinion as to the witness's veracity. *See Sanchez*, 118 F.3d at 198 (prosecutor's comment not an expression of opinion); *Ollivierre*, 378 F.3d at 423 (same). Rather, the remark in this case is

---

**[3]**While vouching constitutes an expression of belief or opinion regarding the credibility or honesty of a witness, "bolstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury." *Sanchez*, 118 F.3d at 198. The defendant did not allege that the prosecuting attorney's comment constituted improper bolstering, only vouching. In any case, the prosecutor's remark in no way referenced evidence known to the government and unknown to the jury.

similar to that at issue in *United States v. Sullivan*, where this court found that the government did not improperly vouch for its witness by referring to a plea agreement and stating, "It should be clear that the witness has far more of an incentive to tell the truth than to lie." 455 F.3d at 259. Here, as in *Sullivan*, "the AUSA made no statement about [his] personal belief in the truth of the statement, only that, given the circumstances of a plea agreement . . . it is more in the subject's interest to be honest than to be dishonest." *Id.* Such a statement is not impermissible vouching but a permissible reference to facts relevant to the jury's assessment of the witness's credibility.

## IV.

Congress enacted § 2423(a) to punish those who offer up young lives to prostitution and who are heedless of the scars they leave and the human devastation that they cause. That statutory intent has been faithfully followed in this case. The judgment of the district court is affirmed.

*AFFIRMED*