PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

RYAN DOUGLAS JENNINGS,
  *Defendant-Appellant.*

No. 06-4854

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(1:05-cr-00559)

Argued: May 25, 2007

Decided: August 3, 2007

Before WILKINSON, NIEMEYER, and GREGORY,
Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Gregory joined.

## COUNSEL

**ARGUED:** Frances Hemsley Pratt, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Patricia Tolliver Giles, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Michael S. Nach-manoff, Acting Federal Public Defender, Alexandria, Virginia, for

Appellant. Chuck Rosenberg, United States Attorney, Michael E. Rich, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

Ryan Jennings, age 24, was convicted for repeatedly touching a 13-year-old girl's buttocks, inner thighs, and genitalia during a "red-eye" transcontinental flight from San Diego, California, to Washington, D.C. (Dulles International Airport in Virginia), in violation of 18 U.S.C. § 2244(a)(3) (criminalizing "abusive sexual contact" with a minor).

On appeal, Jennings contends (1) that the testimony of passengers relating statements made by the 13-year-old girl to the passengers regarding Jennings' abuse was improperly admitted into evidence under an exception to the hearsay rule; (2) that the district court erred in instructing the jury that the government need not prove that Jennings knew the victim's age to prove a conviction under § 2244(a)(3); and (3) that the district court abused its discretion in giving a "deliberate ignorance" instruction to the jury.

We conclude that the hearsay testimony of two passengers about what the child said to them fell within the excited utterance exception to the hearsay rule, Federal Rule of Evidence 803(2); that § 2244(a)(3) does not require that the defendant know the victim's age; and that the district court did not abuse its discretion in giving a deliberate ignorance instruction. Accordingly, we affirm the judgment of the district court.

I

On the evening of December 18, 2005, the mother of Casey, a 13-year-old girl within days of her 14th birthday, and Ryan, an 11-year-old boy, accompanied her children through security at the San Diego International Airport to the gate of their red-eye flight to Dulles Inter-

national Airport, where their father was to pick them up to spend the Christmas holiday with him. The children's mother waited with them at the departure gate for half an hour, and then departed. Ryan Jennings, age 24, who was booked on the same flight, sat across from the children in the departure gate's waiting area. After their mother left, Jennings struck up a conversation with them, asking if they were traveling alone, to which Casey responded, "Yes." Linda Columbus, a fellow passenger on the flight, overheard Jennings say to the children, "Everybody tells you not to talk to strangers, but I'm cool."

After boarding the plane, Casey sat in seat 7A, the window seat, and her brother sat in seat 6A, a window seat directly in front of her. Jennings took seat 7B, directly next to Casey, even though his assigned seat was ten rows back. Jennings told Casey he wanted to sit next to her because he "thought [she] was beautiful." Another male passenger sat in seat 7C, the aisle seat.

A few minutes into the flight, Jennings made attempts to engage Casey in conversation. Casey smelled alcohol on Jennings' breath (he had been partying prior to arriving at the airport). Casey asked Jennings how old he was, and he answered, "21," even though he was 24. Jennings, on the other hand, did not want to know how old Casey was, saying, "In my mind, you are 18. I want to make this right." Jennings then expressed his belief to Casey that it was "really wrong" that a friend of his had been charged with statutory rape, "because if two people want to be together, then they should, regardless of age." While saying this, Jennings placed his left hand on Casey's inner right thigh. Casey crossed her legs in an attempt to get it off, but Jennings left his hand there. By this time, the male passenger in seat 7C was asleep.

When the fasten-seatbelt sign was turned off, Casey got up to go to the lavatory. As Casey moved past Jennings toward the aisle, Jennings "grabbed [her] butt, and then his fingers touched [her] vagina."

After returning from the lavatory, Casey noticed that Jennings had raised the armrest separating his seat from hers. He was also drinking from a bottle of wine. Jennings complained that he was cold, and Casey offered him a blanket that she had brought along. After covering himself with the blanket, Jennings tried to cover Casey's legs with

it as well. Casey resisted, saying that she was "really hot," but Jennings persisted. After he covered Casey's legs, Jennings again placed his left hand on Casey's inner thigh. When Jennings leaned in to give Casey a kiss on the cheek, he spilled wine on the blanket. Jennings cursed at his clumsiness, seized the blanket, and went to the lavatory to clean it off. While Jennings was gone, Casey tried to convince her brother to move back to seat 7B and sit by her, but Ryan said that he was sleeping and was too tired to move. Jennings returned from cleaning the blanket and tried again to cover Casey and himself with the blanket. This time, Casey grabbed the blanket and put it into her backpack.

The absence of cover did not deter Jennings, and he again put his left hand on Casey's inner thigh. Casey again crossed her legs, but this did not discourage Jennings. He hooked his hand between Casey's crossed legs, using the opportunity to reach under Casey and rub her buttocks. With his hand between Casey's legs, Jennings rubbed Casey's buttocks and inner thighs constantly for 15 minutes. Casey did not say anything because she "was scared" and "shocked." She "just thought that if [she] pretended to be sleeping, that maybe he would get bored and go away." Jennings asked Casey for her telephone number, saying, "Maybe we could hook up when we get back to San Diego."

Eventually Jennings got up to sit between Casey's brother Ryan in seat 6A and Karen Schmidt in seat 6C, in the row directly in front of Casey. Ryan was still sleeping, and Jennings began to talk to Schmidt. Casey testified that she overheard Jennings tell Schmidt that he thought Casey was beautiful, to which Schmidt asked, "Well, do you know how old she is?" Jennings replied, "No," and Schmidt told him that Casey was 13 or 14. "It doesn't matter," Jennings said. Schmidt testified that Jennings "reeked" of alcohol and that he continued to drink from his bottle of wine. Jennings repeatedly told Schmidt how "hot" he thought Casey was, and that he wanted to join the "mile high club" with her. Schmidt told Jennings, "I'm sure this isn't the first time you've done this." "No, it's not," Jennings replied, "I have always had a thing for young girls."

Jennings' conversation with Schmidt ended abruptly when Jennings again spilled wine, which landed on the feet and bag of the pas-

senger slumbering in seat 7C. That passenger moved, leaving Casey alone to stretch out over the three seats in the row. Jennings asked Casey if she wanted him to return and sit next to her. Casey said, "No," but Jennings ignored Casey's response, moved her feet, sat down, and placed her legs on his lap. Casey told Jennings that she had overheard his conversation with Schmidt and that she knew that he knew her age. Jennings grimaced and said that it did not matter, "because in his mind, [she] was still 18." Jennings suggested that Casey take out her blanket again so nobody would see what was going to happen. Casey pretended not to hear Jennings and put on her iPod. Throughout this conversation, Jennings was rubbing Casey's lower legs.

Linda Columbus, the fellow passenger who had observed Jennings talking to the children at the departure gate, saw that Jennings was seated next to Casey and leaning in close to her. Alarmed, she contacted a flight attendant and requested that Jennings be moved to a seat away from Casey. The flight attendant ordered Jennings to sit in his assigned seat, and five minutes thereafter Casey moved to sit next to her brother.

When Casey sat down in seat 6B between her brother and Schmidt, Casey felt "shocked, angry, kind of like confused." Schmidt asked Casey what had happened, and Casey recounted in detail Jennings' words and actions. As Casey did so, she "became hysterical" and began to cry.

The plane landed approximately an hour and a half after Jennings was moved to his assigned seat. When the plane stopped at the arrival gate, Jennings, with his hood pulled over his head, rushed to the front of the plane to talk to Casey. Casey, who "was still crying," exited the aircraft as quickly as she could, pretending not to see Jennings. Jennings caught up to Casey and said, "Casey, I'm sorry the flight attendants [ ] had to move me." Casey kept on walking, grabbing her brother to speed him up. Jennings stopped following them as they left the gate terminal, at which point Casey paused and broke down into tears. Linda Columbus witnessed Jennings talk to Casey and Casey's immediate tearful reaction. Columbus approached Casey to ask if she was okay. "Tears were streaming down her face," Columbus testified. "She couldn't really speak. She was really upset." Columbus testified

that when she asked what had happened, Casey exclaimed that Jennings had "touched her butt and between her legs." Columbus sent the children on to meet their father, and then she went in search of security. She found the pilots of their flight and reported what Casey had told her. The captain of the flight approached Jennings and detained him until airport security arrived.

Based on the special aircraft jurisdiction of the federal criminal laws provided by 49 U.S.C. § 46506(1), Jennings was indicted in one count for abusive sexual contact of a minor, in violation of 18 U.S.C. § 2244(a)(3). Before trial, Jennings filed a motion *in limine* that Karen Schmidt and Linda Columbus not be permitted to testify about the statements made to them by Casey concerning Jennings' conduct. The district court denied the motions, finding that the statements were admissible under Federal Rule of Evidence 803(2) (the "excited utterance" exception to the hearsay rule). Jennings renewed the objection during the trial.

At trial, the district court instructed the jury that Jennings' knowledge of Casey's age was not an element of the offense. Jennings did not object to the instruction; indeed, he explicitly agreed to it.

After the jury returned a guilty verdict, Jennings filed a motion for a new trial, claiming for the first time that 18 U.S.C. § 2244(a)(3) required the government to prove, as an element of the offense, that he knew of Casey's age. The district court denied the motion, construing § 2244(a)(3) *not* to require that the defendant have knowledge of the victim's age.

On appeal, Jennings claims that the district court abused its discretion in admitting Schmidt and Columbus' testimony about what Casey had told them; in denying the motion for a new trial, arguing that § 2244(a)(3) required the government to prove beyond a reasonable doubt that he knew of Casey's age; and in giving a "deliberate ignorance" instruction to the jury.

II

Jennings contends first that the district court abused its discretion in admitting the hearsay statements of Karen Schmidt and Linda

Columbus, passengers to whom Casey had related what had occurred on the flight.

The government offered the testimony of Schmidt and Columbus, claiming that it was admissible under either Federal Rule of Evidence 803(1) (permitting admission of "statement[s] describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter") or Rule 803(2) (permitting admission of "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). Schmidt's testimony related to statements Casey made to her five minutes after Jennings was removed from his seat and Casey moved to seat 6B, next to Schmidt. After Casey moved, Schmidt asked her what happened. Casey, who later testified she was "shocked, angry, and confused" at the time, began to recount Jennings' misdeeds, and she quickly began to "unravel," sob, and become "hysterical." Casey told Schmidt "what happened," and "what was said and how [Jennings] touched [her]," telling her how Jennings repeatedly rubbed her inner thigh, locked his hand between her crossed legs in order to rub her buttocks, stroked her neck and hair, kissed her on her cheek and neck, and grabbed her buttocks when she passed by him on the way to the lavatory.

Linda Columbus' testimony related to statements made by Casey immediately after Jennings had spoken to her upon departing the aircraft. In the gate after exiting the aircraft, Jennings said to Casey, "Casey, I'm sorry the flight attendants had to move me." Casey stopped walking and broke down into tears, whereupon Columbus testified that, after witnessing this, she immediately approached Casey, who then blurted out that Jennings had "touched her butt and between her legs."

The district court admitted the testimony of both Schmidt and Columbus as excited utterances under Rule 803(2), although later, the court thought that the testimony might better have been admitted under Federal Rule of Evidence 803(1) (the present sense impression exception).

To qualify under the excited utterance exception, (1) the declarant must have "experienced a startling event or condition"; (2) she must

have related the statement "while under the stress or excitement of that event or condition, not from reflection"; and (3) the statement or utterance must have "related[ed] to the startling event or condition." *Morgan v. Foretich*, 846 F.2d 941, 947 (4th Cir. 1988); Fed. R. Evid. 803(2). The justification for admitting an excited utterance as an exception to the hearsay rule is based on the "assumption that an excited declarant will not have had time to reflect on events to fabricate." *Morgan*, 846 F.2d at 946. Additionally, errors in memory will have had less time to accumulate.

The testimony of Karen Schmidt related statements made by Casey five minutes after Jennings was moved to his assigned seat and while Casey was in a state of shock, anger, and confusion. Shortly after Casey began relating the events that had just occurred, she broke down crying and became hysterical. In view of what Casey had experienced at the hands of Jennings during the course of the flight over a lengthy period of time, we have little difficulty concluding that Casey was making statements about a startling event, as that term is used in the Rule. Jennings grabbed Casey's buttocks and touched her genitalia, repeatedly and methodically groped her upper and inner thighs, and locked his hand between her crossed legs in order to reach under her to grab her buttocks. While doing this, he spoke approvingly of statutory rape, told Casey to retrieve her blanket so that nobody would see what was going to happen, and advocated "hooking up" with Casey once they both returned to San Diego.

Just as we readily conclude that Casey was relating a startling event, we also readily conclude that Casey recounted the events to Schmidt while Casey was "under the stress of excitement caused by the event." *Morgan*, 846 F.2d at 947. In reaching this conclusion, we have considered relevant factors such as "(1) the lapse of time between the event and the declarations; (2) the age of the declarant; (3) the physical and mental state of the declarant; (4) the characteristics of the event; and (5) the subject matter of the statements." *Id.* Casey clearly made the statements while under stress caused by Jennings' abusive sexual contact. Even though Casey waited five minutes before moving to sit next to Schmidt, she remained "shocked, angry, and . . . confused" and "started talking right away," as she began to recount Jennings' misdeeds to Schmidt. She then began to "unravel," sob, and become "hysterical." Even Jennings has not suggested that

the statements made by a 13-year-old in these circumstances were in any sense fabricated.

While Jennings does not contend that Casey's statements were fabrications, he does argue that the time elapsed — five minutes — made them deliberative statements and not excited utterances. He asserts that Casey had made a deliberate choice not to contact a flight attendant when Jennings was away from her, maintaining that Casey's failure to report the abuse to flight attendants at her earliest opportunity precludes the government from using Casey's statements made to Schmidt. *See Morgan*, 846 F.2d at 948. Jennings' reliance upon *Morgan*, however, is completely misplaced. *Morgan* does not create a rule that requires children to report sexual abuse at the earliest opportunity in order for their statements to be considered excited utterances. To the contrary, it affirmatively rejected such a mechanical approach to the excited utterance exception. In *Morgan*, we were concerned that courts would "place undue emphasis on the spontaneity requirement in child sexual abuse cases," and so we sought to focus their attention "not only simply on the time between the abuse and the declaration," but *also* on "the child's first real opportunity to report the incident." *Id.* at 947-48. *Morgan* thus elongated the temporal view courts should take when considering whether a child was in an excited state, and it eschewed the use of the very type of bright-line rule that Jennings would have us adopt. In this case, Casey stated that she did not report the abuse to flight attendants because she was "scared." Indeed, she was not free of Jennings' influence to have a real opportunity of reporting the incidents until after she was safely with her father in the airport.

At bottom, the analysis must focus on whether the declarant's statement was trustworthy by being made in circumstances where it would not be reasonable to conclude that the declarant fabricated the statement or incorrectly remembered the events related. *Morgan*, 846 F.2d at 947-48. The lapse of time between the event and the declaration is just one of several factors to consider in the analysis. *Id.* at 947.

In this case we have little difficulty in concluding that Casey's statements to Schmidt related a startling event and were made while Casey was still under the stress of the event. Therefore, they were

properly admitted under the excited utterance exception to the hearsay rule.

With respect to Casey's statements made to Linda Columbus while in the gate after departing the plane, we again have little difficulty in concluding that Casey's statement was an excited utterance that falls within the hearsay exception. Casey made the statements to Columbus *immediately* after Jennings had stated to Casey that he was sorry the flight attendants had to move him and Casey had broken down crying. At that moment of emotional distress, Columbus testified that Casey blurted out to her that Jennings had "touched her butt and between her legs." Again, this was a statement about a startling event made while the declarant was under stress of excitement caused by the event. Even though the core acts of abuse took place during the course of the long flight, an hour or two earlier, Casey was still being pursued by Jennings. It was not until Jennings finally left that Casey broke down crying and instantaneously related the simple statement to Columbus.

In short, we conclude that the district court did not abuse its discretion in admitting the testimony of Schmidt and Columbus, relating what Casey had told them.

### III

Jennings next contends that the district court erred in failing to instruct the jury that the government had to prove, as an element of the offense under 18 U.S.C. § 2244(a)(3), that he *knew*, at the time of the alleged misconduct, that Casey had not yet attained the age of 16. Jennings raised this issue for the first time after the jury's guilty verdict, in a motion for new trial, and now argues that the district court abused its discretion in denying his motion for a new trial.

The government argues that because Jennings failed to object to the jury's instruction — indeed, he "asked for the very instruction about which he has since complained" — we should review the instruction under the plain error standard of Federal Rule of Criminal Procedure 52(b). The government maintains that the district court did not err and certainly did not plainly err.

We agree with the government that Jennings forfeited his right to challenge the jury instruction by not timely objecting to it in accordance with Federal Rule of Criminal Procedure 30(d) (requiring specific objections and grounds for them before the jury retires to deliberate). Accordingly, we review for plain error. *See United States v. Olano*, 507 U.S. 725, 731 (1993) (quoting with approval *Yakus v. United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a . . . right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it")). As part of that standard of review, Jennings has the burden of establishing, among other things, that the court committed error and that the error was plain. *Id.*

Jennings asserts that the district court erred in failing to instruct the jury that the government must prove, in establishing a violation of § 2244(a)(3), that he had knowledge of Casey's age. Our review of this claim begins with the language of the statute, which provides:

> (a) Whoever . . . knowingly engages in or causes sexual contact with or by another person, if so to do would violate —

> * * *

> (3) subsection (a) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both.

Section 2243(a), which is incorporated, provides:

> (a) Whoever . . . knowingly engages in a sexual act with another person who —

> > (1)  has attained the age of 12 years but has not attained the age of 16 years; and

> > (2)  is at least four years younger than the person so engaging;

or attempts to do so, shall be fined under this title, impris-
oned not more than 15 years, or both.

Section 2243(d) provides that in proving a violation of § 2243(a), "the
Government need not prove that the defendant knew (1) the age of the
other person engaging in the sexual act; or (2) that the requisite age
difference existed between the person so engaging." 18 U.S.C.
§ 2243(d). Section 2243 does, however, afford the defendant an affir-
mative defense to prove that he did not know that the defendant had
not attained the age of 16. *See* 18 U.S.C. § 2243(c)(1).

Instructing the jury on the requirements of proving a § 2244(a)(3)
violation, the district court stated:

> [I]t is not necessary that the government prove that the
> defendant knew Casey had reached the age of 12, but had
> not yet reached the age of 16, or that the defendant knew
> that Casey was at least four years younger than the defen-
> dant.
>
> Now, in a prosecution such as this for sexual contact with
> a minor, it is a defense, which the defendant must establish
> by a preponderance of the evidence, that the defendant rea-
> sonably believed that the other person had attained the age
> of 16 years.

We conclude that the district court properly instructed the jury.
Section 2244(a)(3) provides that a defendant is guilty of sexual *con-
tact* with a minor if his conduct would have violated § 2243(a) "had
the sexual *contact* been a sexual *act*." (Emphasis added). Thus, under
the straightforward language of the statute, we are to read § 2243(a)
and determine whether Jennings had committed that offense, substi-
tuting for "sexual act" the term "sexual contact."* Doing so, we read

---

*The statute distinguishes a sexual *act* from sexual *contact* as follows:

[T]he term "sexual act" means —

(A) contact between the penis and the vulva or the penis and
the anus, and for purposes of this subparagraph contact involving
the penis occurs upon penetration, however, slight;

§ 2243(a) to criminalize "[sexual contact] with another person who . . . (1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging." To prove this violation of § 2243(a), however, the government need not "prove that the defendant knew the age of the other person engaging in the sexual act." *See* 18 U.S.C. § 2243(d). Since a *violation* of § 2243(a) does not require that the defendant know the age of the victim, a violation of § 2244(a)(3) likewise does not require that the defendant know the age of the victim, because § 2244(a)(3) explicitly criminalizes conduct that "would *violate*" § 2243(a) had the "sexual contact" been a "sexual act." In other words, a violation of § 2244(a)(3) is *in pari materia* with a violation of § 2243(a), the only difference being whether the conduct involved sexual *contact* or a sexual *act*. The key language in § 2244(a)(3) is the language providing that "if so to do would *violate* § 2243(a)." (Emphasis added). Because a *violation* of § 2243(a) is proven without demonstrating that the defendant knew of the victim's age, so too is a violation of § 2244(a)(3) so proved.

Jennings contends that § 2244(a)(3) incorporates only subsection (a) of § 2243, but not subsection (d), and therefore, by negative impli-

---

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(2). And:

[T]he term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(3).

cation, § 2244(a)(3) includes a *mens rea* for the victim's age. This argument, however, ignores the language of § 2244(a)(3) relating to a *violation* of § 2243(a) and the fact that a violation of § 2243(a) does not require proof of *mens rea* with respect to the victim's age. *See* 18 U.S.C. § 2243(d).

Moreover, Jennings' argument would require us to assume that Congress intended to divide the sexual abuse of minors into two categories, "abusive sexual acts" and "abusive sexual contact," and to require *less* proof for convicting defendants of the more serious category of conduct, with its considerably more substantial penalties. "Abusive sexual acts" includes rape, sodomy, oral sex, penetration by object, and direct touching of the victim's unclothed private parts, *see* 18 U.S.C. § 2246(2), whereas "sexual contact" constitutes a less serious form of sexual abuse and includes "intentional touching, either directly or through the clothing, of sexual areas," *see id.* § 2246(3). Thus under Jennings' construction, it would be easier for the government to prove the more serious "sexual act" offenses than the less serious "sexual contact" offenses. Additionally, the defendant would have an affirmative mistake-of-age defense for penetration and touching *under* the clothes, but not for the less serious sexual contact offense of simply touching *through* the clothes. Such anomalous results do not find any support in the statutory scheme created by Congress for punishing the broad category of sexual abuse.

Under the statutory scheme, abusive sexual *acts* are criminalized in §§ 2241-2243. Section 2241 criminalizes abusive sexual acts involving the use of force or involving threats of death, serious bodily injury, or kidnapping. It also criminalizes sexual acts with children under the age of 12. *See* 18 U.S.C. § 2241(c). Section 2242 criminalizes abusive sexual acts that involve threats of bodily injury of a less serious nature or involving those who are disabled. Finally, § 2243 is directly addressed at sexual acts involving minors aged 12 to 15, regardless of whether any threat or force was involved. In the two instances where the victim's age is an element of the crime, Congress included a provision specifically clarifying that courts must not interpret the element to require the government to prove the defendant's *knowledge* of the victim's age. *See* 18 U.S.C. § 2241(d) ("The government need not prove that the defendant knew that the other person

engaging in the sexual act had not attained the age of 12 years"); 18 U.S.C. § 2243(d) (similar).

Instead of creating a separate scheme for abusive sexual *contact* in § 2244, Congress simply repeated the scheme it had laid out for abusive sexual *acts* in §§ 2241 through 2243 by incorporating those provisions into § 2244. Thus, for abusive sexual contact involving the use of force, § 2244(a)(1) incorporates § 2241(a) and (b); for abusive sexual contact involving a minor under the age of 12, § 2244(a)(5) incorporates § 2241(c); for abusive sexual contact involving a minor aged 12 to 15, § 2244(a)(3) incorporates § 2243(a), and so forth. There are no qualifications in the incorporations, thus revealing Congress' intent to incorporate the entire offenses, including their lack of *mens rea* requirements with respect to age.

Even if we were to consider Jennings' argument that we look only at subsection (a) of § 2243 and not subsection (d), we are still left with statutory language of *mens rea* that fails to support Jennings' position. Section 2243(a) punishes anyone who "*knowingly* engages in a sexual act with another person who (1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging." Under Jennings' construction of the statute, the adverb "knowingly" applies not only to the verb "engages," but also to the age-defining clauses thereafter. This approach, however, was recently rejected by us in *United States v. Jones*, 471 F.3d 535 (4th Cir. 2006).

In *Jones*, the question was whether the government was required to prove the defendant's knowledge of the victim's minority status in a prosecution brought under 18 U.S.C. § 2423(a), which punishes a "person who *knowingly* transports an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution." In holding that the adverb "knowingly" only modified the verb "transports," but not the clauses thereafter, we stated, "Adverbs generally modify verbs, and the thought that they would typically modify the infinite hereafters of statutory sentences would cause grammarians to recoil." *Id.* at 539. Accordingly, we saw "nothing on the face of [§ 2423(a)] to suggest that the modifying force of 'knowingly' extends beyond the verb to the other components of the offense." *Id.*

The same grammatical reasoning applies with equal, if not stronger, force to § 2243(a). The efficacy of the adverb "knowingly" extends no further than the verb "engages," and, whereas the statutory sentence in *Jones* comprised a single undivided subsection, the age requirements of the victim in § 2243(a) are set off from "knowingly" by subsections (1) and (2), thus severing them more completely from the adverb's modifying force. If it was an implausible grammatical reading in *Jones* to extend the adverb's reach beyond the verb in a single unified sentence, it is doubly implausible here to extend the adverb's reach not only through prepositional, relative, and conjunctive phrases and clauses, but also through statutory paragraphs.

While Jennings could argue that our grammatical reading of § 2243(a) in isolation renders subsection (d) superfluous, such an argument would overlook the fact that in the scheme of crimes relating to abusive sexual acts, Congress distinguished between crimes in which age was an element and crimes in which age was not an element, making it manifestly clear that when age was an element, it was not part of the *mens rea*. If nothing more, subsection (d) acts as an insurance policy in the event that a court misconstrued § 2243(a)'s grammar as Jennings does.

Finally, Jennings argues that § 2244(a)(3) should be construed in the same manner as the Supreme Court construed the Federal Child Pornography statutes, 18 U.S.C. §§ 2252 and 2252A. In *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68 (1994), the Supreme Court held that, even though it was not the "most natural grammatical reading" of the statute, the adverb "knowingly" in § 2252 modifies the minority status of the children depicted in the pornography. The Court reasoned that "the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *Id.* at 72. In the case of child pornography, "the age of the performers is the crucial element separating legal innocence from wrongful conduct," as the "trafficking in sexually explicit, though not obscene, materials involving adults" is not criminalized. *Id.* at 72-73. The reasoning of *X-Citement Video*, which "was directed at awareness of the elements that define circumstances upon which criminality turns," *United States v. Bostic*, 168 F.3d 718, 722 (4th Cir. 1999), is inapplicable here. "[T]he minority of the victim is hardly a factor that distinguishes the defendant's actions from 'innocent con-

duct.'" *Jones*, 471 F.3d at 541. Having sexual contact with an adult against his or her will is already unlawful under federal law. *See* 18 U.S.C. § 113(a)(5) (federal assault statute).

It is incontrovertibly clear that for abusive sexual *acts* involving minors, Congress did not intend to require the government to prove that the defendant knew the victim's age. *See* 18 U.S.C. §§ 2241(d), 2243(d). It only makes sense to conclude that Congress had equal concern for minors who were the victims of abusive sexual contact. The plain purpose of § 2244(a)(3) is to protect minors, as is the purpose of §§ 2241(d) and 2243(d), and our reading furthers that Congressional purpose.

Accordingly, we conclude that the district court did not err in instructing the jury that the government need not prove that the defendant knew the victim's age in order to establish a violation of 18 U.S.C. § 2244(a)(3), and therefore there was no error, plain or otherwise.

IV

Finally, Jennings contends that the district court abused its discretion in instructing the jury on "deliberate ignorance." The court instructed the jury that a

> finding beyond a reasonable doubt of an intent of a defendant to avoid knowledge or enlightenment would permit the jury to infer knowledge. Stated another way, a defendant's knowledge of a particular fact may be inferred from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.

Jennings argues that if the government was not required to prove knowledge of Casey's age, "then the deliberate ignorance instruction was simply irrelevant to any issue before the jury."

The district court's deliberate ignorance instruction was not, however, sequentially related to its instruction regarding the lack of a *mens rea* requirement for the victim's age. Rather, it was part of the

district court's general explanation of the term "knowingly," which was relevant because the statute required the government to prove, as an element of the offense, that Jennings "knowingly engage[d] in or cause[d] sexual contact" with Casey. *See* 18 U.S.C. § 2244(a)(3).

Moreover, the balance of the instructions made clear to the jury that the government did not need to prove knowledge of Casey's age, and we "will not reverse a conviction so long as the instructions *taken as a whole* adequately state the controlling law." *United States v. McIver*, 470 F.3d 550, 557-58 (4th Cir. 2006) (quoting *United States v. Wills*, 346 F.3d 476, 492 (4th Cir. 2003)).

We conclude therefore that it was not an abuse of discretion for the district court to have given that instruction to the jury.

* * *

For the reasons given, we affirm the judgment of the district court.

*AFFIRMED*