# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3394
_____

United States of America

*Plaintiff - Appellee*

v.

Eugene Hollow Horn Bear

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Central

_____

Submitted: June 13, 2025
Filed: July 23, 2025

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Eugene Hollow Horn Bear was convicted by a jury of two counts of abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 2244, and 2246(3).  In addition, he pled guilty to one count of failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a), the Sex Offender Registration and Notification Act ("SORNA").

The district court[1] sentenced him to a term of 108 months' imprisonment, followed by a 5-year term of supervised release. Hollow Horn Bear raises three arguments on appeal: (1) the evidence was insufficient to support his convictions for abusive sexual contact; (2) the two convictions violate the Double Jeopardy Clause; and (3) his sentence is substantively unreasonable. We affirm.

## I.    BACKGROUND

In 1989, Eugene Hollow Horn Bear, a South Dakota resident, was convicted of abusive sexual contact with a minor. Pursuant to SORNA, he was required to register as a sex offender in each jurisdiction where he resides and update the registration within three business days of any "change of name, residence, employment, or student status." 34 U.S.C. § 20913(a), (c). In May 2022, Hollow Horn Bear was convicted of failure to register as a sex offender and was sentenced to 24 months' imprisonment. He began a 5-year term of supervised release on February 6, 2023. Upon release, Hollow Horn Bear registered an address in Rosebud, South Dakota, with the Rosebud Sioux Tribe Sex Offender Registration Office. Hollow Horn Bear left his Rosebud address on July 5, 2023, following a dispute with the homeowner. He failed to update his registration as required.

On the evening of July 20, 2023, Hollow Horn Bear visited Mission, South Dakota. There, he ran into his stepsister, B.B.H., and her adopted son, Lawrence Red Tomahawk. The trio spent the next few hours drinking alcohol before retiring to an abandoned carwash to sleep. B.B.H. awoke during the night to find Hollow Horn Bear kneeling beside her and touching her breasts and vagina. She pushed him away and called out to Red Tomahawk for help. Red Tomahawk woke up and saw Hollow Horn Bear's hand under B.B.H.'s pants. The next morning, B.B.H. and Red Tomahawk reported the incident to tribal law enforcement. Because B.B.H. had bathed in the clothing she wore that night, no physical evidence was collected.

---

[1]The Honorable Eric C. Schulte, United States District Judge for the District of South Dakota.

However, both she and Red Tomahawk provided statements to investigators regarding the incident.

In August 2023, a federal grand jury indicted Hollow Horn Bear on four counts: sexual abuse of a person incapable of consent, in violation of 18 U.S.C. §§ 1153, 2242(2), and 2246(2)(C) (Count 1); abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 2244(a)(2), and 2246(3) (Count 2); abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 2244(b), and 2246(3) (Count 3); and failure to register as a sex offender, in violation of SORNA (Count 4). A superseding indictment added Count 5, commission of a crime of violence while failing to register as a sex offender, in violation of SORNA. The district court severed the SORNA counts and Hollow Horn Bear proceeded to trial on Counts 1 through 3.

Prior to trial, after Hollow Horn Bear requested new counsel, his appointed counsel moved to withdraw from his case. The district court granted the motion to withdraw and assigned new trial counsel. Hollow Horn Bear's new counsel moved for a continuance on April 15, 2024, to "investigate the case, review discovery and properly prepare the defense." The district court granted the continuance the following day, setting the pretrial motion deadline for August 6, 2024, and scheduling trial for August 20, 2024. Hollow Horn Bear did not file any pretrial motions challenging the superseding indictment.

At trial, B.B.H testified she awoke to Hollow Horn Bear's fingers "in [her] uterus" and his other hand touching her breasts. She testified that she called out to her adopted son for help, who then chased Hollow Horn Bear away from the carwash. On cross-examination, she acknowledged it was difficult to remember certain details of the night because she had consumed a large quantity of vodka. Red Tomahawk also testified he heard B.B.H.'s call for help and observed Hollow Horn Bear's right hand "down in her pants." The jury acquitted Hollow Horn Bear of Count 1 (sexual abuse of a person incapable of consent) and convicted him on Counts 2 and 3 (abusive sexual contact). He later pled guilty to Count 4 (failure to

-3-

register) pursuant to a plea agreement, which provided that Count 5 (commission of a crime of violence while failing to register) would be dismissed.

At sentencing, the district court calculated a total offense level of 23 and a criminal history category of VI, resulting in an advisory Guidelines range of 92 to 115 months' imprisonment. Hollow Horn Bear requested a downward variance or departure based on his age and health conditions, including congestive heart failure. He also cited homelessness, unemployment, and limited financial resources as contributing factors to his failure to register. The district court acknowledged these mitigating factors and sentenced him to 36 months on Count 2 (abusive sexual contact), 24 months on Count 3 (abusive sexual contact), and 108 months on Count 4 (failure to register), with all terms to run concurrently and concurrent with a separate revocation sentence, for a total term of 108 months' imprisonment. The court also imposed 5 years' supervised release on each count, to run concurrently. Hollow Horn Bear appeals his convictions for abusive sexual contact and his sentence.

## II.   DISCUSSION

### A.  Sufficiency of the Evidence

We review *de novo* whether the evidence was sufficient to support the convictions, viewing the record in the light most favorable to the verdict and drawing all reasonable inferences in favor of the jury's findings. United States v. White, 962 F.3d 1052, 1055–56 (8th Cir. 2020).

Hollow Horn Bear argues the evidence was insufficient to support his convictions because the government relied on the testimony of two intoxicated witnesses and presented no forensic evidence. However, credibility determinations rest squarely with the jury and are "well-nigh unreviewable" on appeal. United States v. Johnson, 39 F.4th 1047, 1052 (8th Cir. 2022) (citation omitted). Although B.B.H. and Red Tomahawk admitted drinking heavily, their accounts aligned:

-4-

B.B.H. testified that Hollow Horn Bear digitally penetrated her and touched her breasts, and Red Tomahawk confirmed he saw Hollow Horn Bear's hand inside B.B.H.'s pants. The jury was entitled to evaluate any credibility issues in light of the witnesses' intoxication and weigh their testimony with the other evidence admitted at trial. The absence of physical evidence is not fatal, as a conviction may be sustained based on a victim's testimony alone. See United States v. Seibel, 712 F.3d 1229, 1237 (8th Cir. 2013).

## B. Multiplicity

The Double Jeopardy Clause of the Fifth Amendment prohibits multiple punishments for the same offense. United States v. Bennett, 44 F.3d 1364, 1368 (8th Cir. 1995). An indictment violates this prohibition if "the two offenses charged are in law and fact the same offense." Id.; see also United States v. Chipps, 410 F.3d 438, 447 (8th Cir. 2005). A defendant must raise a claim of multiplicity in a timely pretrial motion. Fed. R. Crim. P. 12(b)(3)(B)(ii). If it is not raised before trial, the claim is waived absent a showing of good cause. Fed. R. Crim. P. 12(c)(3); United States v. Anderson, 783 F.3d 727, 740–41 (8th Cir. 2015). We consider whether an indictment is multiplicitous in violation of the Double Jeopardy Clause *de novo*. United States v. Taylor, 44 F.4th 779, 795 (8th Cir. 2022).

Because Hollow Horn Bear did not file a pretrial motion challenging the allegedly multiplicitous counts, he must establish good cause for his failure to do so. See Fed. R. Crim. P. 12(c)(3). Hollow Horn Bear asserts good cause exists because his prior counsel was deficient and his new counsel did not have sufficient opportunity to file a challenge. However, after new counsel was appointed on April 10, 2024, the district court granted a continuance and rescheduled trial for August 20, 2024. Under the revised scheduling order, the deadline for pretrial motions was extended to August 6, 2024. Hollow Horn Bear neither filed a Rule 12 motion nor requested additional time to do so. These circumstances do not amount to good cause because "appointment of new counsel is not good cause for filing an untimely

motion." United States v. Dabney, 42 F.4th 984, 989 (8th Cir. 2022). That principle applies with equal, if not greater, force here, where no motion was filed at all.

Even if we assumed good cause exists, Hollow Horn Bear's double jeopardy claim fails on the merits. Where a defendant is charged with multiple violations of the same statute, the relevant inquiry is whether Congress intended the underlying acts to constitute distinct units of prosecution. United States v. Platter, 514 F.3d 782, 785 (8th Cir. 2008). In United States v. Two Elk, we considered a similar provision—aggravated sexual abuse under 18 U.S.C. § 2241(c)—and concluded that it defines a "separate-act" offense. 536 F.3d 890, 899 (8th Cir. 2008). We determined § 2241(c) criminalizes "a sexual act," not a course of conduct or a series of acts, and that the disjunctive structure of § 2246(2)'s definitional provision supports treating each enumerated act as a separate offense. Id.

The same reasoning applies here. Section 2244(a)(2) mirrors § 2241 in its construction, though it applies to "sexual contact" rather than a "sexual act." Likewise, § 2244(b), charged under Count 3, prohibits nonconsensual "sexual contact." Neither section references a "course of conduct" or uses the plural form "contacts." See United States v. Jennings, 496 F.3d 344, 353 (4th Cir. 2007) ("Instead of creating a separate scheme for abusive sexual contact in § 2244, Congress simply repeated the scheme it had laid out for abusive sexual acts in §§ 2241 through 2243 by incorporating those provisions into § 2244."). Section 2246(3), which defines "sexual contact," lists specific forms of contact in the disjunctive—"the intentional touching . . . of the genitalia, anus, groin, breast, inner thigh, or buttocks"—reinforcing the conclusion that each enumerated act constitutes a distinct offense. Read together, these provisions reflect Congress's intent to treat discrete sexual contacts as separate criminal acts. Because touching the victim's breast and genitalia are distinct violations, "there is no double jeopardy problem" in this case. See Two Elk, 536 F.3d at 899.

### C. Substantive Reasonableness of the Sentence

We review a district court's sentence for abuse of discretion. United States v. Bryant, 606 F.3d 912, 918 (8th Cir. 2010). A district court abuses its discretion if it (1) fails to consider a relevant sentencing factor; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in weighing the appropriate factors. United States v. Ali, 799 F.3d 1008, 1033 (8th Cir. 2015). We presume a sentence within the advisory Guidelines range is substantively reasonable. United States v. Goodale, 738 F.3d 917, 926 (8th Cir. 2013). The defendant bears the burden of rebutting that presumption. Id.

Hollow Horn Bear challenges only the substantive reasonableness of his 108-month sentence for failing to register as a sex offender. He contends his noncompliance with registration obligations was "somewhat outside of his control." He registered in May 2023 and would not have ordinarily been required to update his registration until August 2023, but he was forced to leave his registered address on July 5, 2023, after the homeowner assaulted him and he was evicted. In addition to that complication, Hollow Horn Bear contends he was unemployed, of limited financial means, and suffering from age-related health issues, all of which prevented him from complying with his registration requirements.

Hollow Horn Bear raised these mitigating factors at sentencing, and we presume the district court considered the arguments before it. See United States v. Wisecarver, 644 F.3d 764, 774 (8th Cir. 2011). After weighing the applicable factors set forth in 18 U.S.C. § 3553(a), the court emphasized the serious nature of the offense—a consideration well within its discretion. See United States v. Isler, 983 F.3d 335, 344 (8th Cir. 2020) (noting the district court's wide latitude in assigning weight to specific sentencing factors). To establish substantive unreasonableness, Hollow Horn Bear "must show more than the fact that the district court disagreed with his view of what weight ought to be accorded certain sentencing factors." United States v. Townsend, 617 F.3d 991, 995 (8th Cir. 2010) (per curiam). Hollow Horn Bear's disagreement with the sentence imposed or the weight given certain

factors alone does not warrant reversal of his within-Guidelines sentence.  See Isler, 983 F.3d at 344.

## III.   CONCLUSION

We affirm the judgment and sentence of the district court.

_____